Margaret MARGRAVE, Plaintiff,

v.

BRITISH AIRWAYS, Defendant.

No. 85 CIV. 4070 (PKL).

United States District Court,
S.D. New York.

Sept. 10, 1986.

Palmeri & Gaven (John J. Palmeri, of counsel), New York City, for plaintiff.

Condon & Forsyth (Stephen J. Fearon, of counsel), New York City, for defendant.

## OPINION

LEISURE, District Judge:

Plaintiff Margaret Margrave ("Margrave") claims that she suffered a back injury as the result of an accident aboard a plane owned by defendant British Airways, and that the airline is therefore liable for her ensuing damages under the Warsaw Convention.[1] British Airways now moves to dismiss Margrave's claim for failure to state a cause of action, pursuant to Fed.R. Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. Since matters outside the pleadings have been presented to and been considered by the court, defendant's motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

## STATEMENT OF FACTS

The facts in this case are largely undisputed. On August 29, 1984, plaintiff Mar-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.App. § 1502. It is undisputed that the Warsaw Convention governs plaintiff's cause of action, whih was originally brought in state court, and then removed to this Court pursuant to 28 U.S.C. § 1441(d).

grave, then seventy-five years old, was a passenger on British Airways Flight 176, scheduled to depart from Kennedy International Airport in New York and to arrive in Heathrow Airport in London. Plaintiff boarded the aircraft, a Boeing 747, at 8:30 P.M. The plane left the terminal gate at the scheduled time of departure, 9:00 P.M. At about that time, the British Airways Control Center in London received a telephone threat that a bomb was on board British Airways Flight 174, another London-bound flight which had left New York approximately two hours earlier. Flight 174 was diverted to Boston; passengers aboard Flight 176 were not notified of the bomb threat.

Subsequently, it was determined that eleven pieces of baggage from the endangered Flight 174 had been placed on Flight 176. As a result, Flight 176 returned to the terminal gate, and the baggage in question was removed. In total, the bomb threat and ensuing safety measures caused a delay of approximately two hours. At 11:04 P.M., while preparing for takeoff, a mechanical problem forced Flight 176 to return once again to the terminal. An additional three hours passed during the investigation of this mechanical problem and the transfer of passengers to a new plane. Flight 176 finally departed at 2:21 A.M. on August 30, 1984, five hours and twenty-one minutes after its scheduled departure time.

During most of the delay, plaintiff remained seated in a "very cramped position" aboard defendant's airplane, see Deposition of Margaret Margrave ("Margrave Dep.") at 50, with her seat belt fastened. Id. at 20. Although plaintiff acknowledges that she left the plane and was able to "move about" in the airport terminal during the period in which a substitute aircraft was being prepared for use, see id. at 17, she maintains that passengers were generally "not able to get up" during the delay and that "no one could even enjoy stretching." Id. at 20. Plaintiff alleges that she suffered back pain throughout this ordeal, id., although she admits that she never informed any British Airways personnel of her discomfort during the delay. Id. at 21.

Moreover, plaintiff concedes that, at least while she was waiting in the terminal, nothing prevented her from leaving the airport, other than her understandable reluctance to avoid missing her trip. See id. at 42–43; see also Deposition of British Airways employee Jorgen Pedersen ("Pedersen Dep.") at 28 (any passenger on the flight who wanted to discontinue while the airplane was at the gate would be free to leave).

After Flight 176 had left Kennedy Airport, Margrave told a British Airways stewardess that her back was hurting her very much. See Margrave Dep. at 21. In response to this complaint, the stewardess assured plaintiff that "[w]e will be there soon." Id. Upon her arrival in England, plaintiff continued to suffer back pain and sought medical treatment. The physicians who treated Margrave in England took no X-rays or other preventative measures, although they did prescribe painkillers. Plaintiff's activities abroad entailed visiting three different cities in England and staying in university dormitories.

When plaintiff returned to New York on September 24, 1984, her doctors discovered compression fractures at the T–11, L–1, and L–2 levels of her spine. Because of these fractures, plaintiff was admitted to the New York Hospital for treatment on October 3, 1984, where she remained for over three weeks. Plaintiff alleges that she experienced severe back pain during the delay of Flight 176, and now claims that the delay itself was the cause of her injuries.

## DISCUSSION OF LAW

A. *Whether There Was an "Accident"*

Article 17 of the Warsaw Convention makes air carriers absolutely liable for injuries sustained by a passenger "if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." 49 Stat. 3000; see *Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 1339–40, 84 L.Ed.2d 289 (1985). In moving for summary judgment,

defendant argues that the plaintiff's injuries were not caused by an "accident" within the meaning of Article 17 of the Warsaw Convention.

In support of this argument, defendant cites plaintiff's own sworn statement that her back injury was attributable solely to the fact that she sat in a "very cramped position" for an extended period while on board defendant's plane. *See* Margrave Dep. at 50–51. As defendant points out, however, the mere act of sitting aboard an aircraft is a normal aspect of commercial flying. *Scherer v. Pan Am,* 54 A.D.2d 636, 636, 387 N.Y.S.2d 580, 581 (1st Dep't 1976). Moreover, courts have consistently held that normal travel procedures which produce an injury due to a passenger's peculiar internal condition are not "accidents" within the meaning of Article 17. *See Air France v. Saks,* 105 S.Ct. at 1340 (citing cases).

■ Thus, extended sitting in an airplane, even in an uncomfortable position, cannot properly be characterized as the sort of "accident" that triggers an airline's liability under the Warsaw Convention. Plaintiff's counsel argues, however, that even though extended sitting was the immediate cause of plaintiff's injury, the "accident" that set off the chain of events which eventually led to that injury was, in fact, the bomb threat to British Airways Flight 174.

Arguably, such a definition of the "accident" at issue distorts the factual record in this case beyond recognition for the transparent purpose of forcing plaintiff's injuries into the category of those compensable under the Warsaw Convention. Nonetheless, on a motion for summary judgment, the court is required to resolve all questionable inferences in favor of the party opposing the motion. *See United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). Accordingly, this Court accepts, for purposes of deciding defend-

ant's motion, plaintiff's contention that the accident at issue in this case was the bomb threat to Flight 174.

In *Air France v. Saks,* the Supreme Court held that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening external to the passenger." 105 S.Ct. at 1345. There is little doubt that a bomb threat constitutes "an unexpected or unusual event" under the Supreme Court's analysis in *Saks. See Salerno v. Pan Am,* 606 F.Supp. 656, 657 (S.D.N.Y.1985) (a bomb threat was held to be an accident).[2] Thus, plaintiff has satisfied her burden of showing that an "accident" occurred within the meaning of Article 17.

### B. Whether the Accident "Caused" Plaintiff's Injury

■ The mere occurrence of an accident, however, does not lead to liability under the Warsaw Convention. Rather, the accident must have "caused the damage ... sustained." 49 Stat. 3000. In *Saks,* the Supreme Court stated that, "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger," 105 S.Ct. at 1346. The Supreme Court also noted that Article 17 "cannot be stretched to impose carrier liability for injuries that are not caused by accidents." *Id.*

Traditionally, courts have applied proximate cause analysis in determining an air carrier's liability under the Warsaw Convention. *See, e.g., DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1196 (3d Cir.1978). Following the Supreme Court's decision in *Saks,* courts have continued to apply the test of proximate cause to questions of causation under the Warsaw Convention. *See Fischer v. Northwest Airlines,* 623 F.Supp. 1064, 1065 (N.D.Ill.

---

**2.** In addition, since baggage from Flight 174 had been placed aboard plaintiff's Flight 176, the bomb threat was arguably an accident "on board the aircraft," as required by Article 17. *See* 49 Stat. 3000.

1985); *Salce v. Aer Lingus,* 84 Civ. 3444, slip op. at 8 (S.D.N.Y. May 1, 1985) (Stewart, J.) [Available on WESTLAW, DCTU database]; *cf. Perera v. Varig,* 775 F.2d 21, 23 (2d Cir.1985) (carrier's action did not proximately cause cargo loss).

In the instant case, plaintiff's claim for damages depends upon an attenuated chain of causation. *Cf. Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1929). According to plaintiff's scenario, the bomb threat to Flight 174 caused a delay in the departure of plaintiff's flight, since British Airways was forced, as a precautionary measure, to unload some suitcases from Flight 176. An independent cause, a mechanical difficulty, led to a further delay. Because of the resulting unloading of baggage and transfer of passengers to another airplane, plaintiff remained seated for a number of additional hours, during which period she suffered continual back pain. *See* Margrave Dep. at 20. Several weeks later, plaintiff's doctors discovered that Margrave was suffering from vertebral fractures which may or may not have been caused by her prolonged sitting aboard Flight 176. *See* discussion, *infra,* at 10–12.[3]

Questions of proximate cause are ordinarily treated as questions of fact. *See, e.g., Fustok v. Conticommodity Services,* 618 F.Supp. 1082, 1087 (S.D.N.Y.1985). Nonetheless, the question of proximate cause may be one for the court where there are active and efficient intervening causes, or where reasonable jurors could reach only one conclusion regarding the issue of proximate cause. *See Kroon v. Beech Aircraft Corp.,* 628 F.2d 891, 893 (5th Cir. 1980).

When a party has moved for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although proximate cause is clearly a material fact in this case, British Airways is entitled to summary judgment as a matter of law unless the non-moving party (Margrave) has made a "sufficient showing" that there is a "genuine issue" as to proximate cause. *See Celotex Corp. v. Catrett,* —— U.S. —— 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists only when reasonable jurors could disagree. *See* W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 481 (1984). When reasonable persons could reach only one conclusion, no triable issue exists. *Id.*

Although courts are generally disposed to deny applications for summary judgment whenever a dispute concerning proximate cause has been identified, *see, e.g., Canipe v. National Loss Control,* 736 F.2d 1055, 1062 (5th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 969 (1985), the Second Circuit has recognized that questions of proximate cause are subject to summary judgment in appropriate cases. *See Goldberg v. Mallinckrodt,* 792 F.2d 305, 310 (2d Cir.1986) (affirming summary judgment on grounds that alleged fraud was not the proximate cause of plaintiff's injuries); *see also Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38 (2d Cir.1986) (granting summary judgment based on plaintiffs' inability to prove a causal nexus between plaintiffs' economic injury and defendant's antitrust violation).

In this case, reasonable persons could conclude only that the purported "accident," the bomb threat to Flight 174, was in no sense the proximate cause of plaintiff's injuries. The record presented to the court sets forth an allegation of proximate cause that cannot withstand even cursory scrutiny. For example, although plaintiff

---

**3.** The fragile chain of causation upon which plaintiff's theory of liability relies becomes stretched to the breaking point when one considers that plaintiff might have abated her discomfort at any time during the five-hour delay simply by leaving the plane or, at a minimum, complaining to British Airways personnel. *See* discussion, *supra,* at 4.

claims that the bomb threat was the proximate cause of her injuries because it caused her flight to be delayed more than five hours, it is undisputed that a subsequent, unrelated mechanical problem with the aircraft's engine was the direct cause of more than three hours of the delay. *See* Pedersen Dep. at 18–21.

Even more troubling is the possibility that plaintiff's injury was caused by a pre-existing medical condition rather than by prolonged sitting aboard Flight 176. Ordinarily, on a motion for summary judgment, a trial court would not hesitate to resolve a conflict in medical evidence regarding the significance of a pre-existing condition in the non-movant's favor. In this case, however, plaintiff's own medical evidence casts significant doubt on the proposition that the five-hour delay of Flight 176 proximately caused plaintiff's injury.[4]

For example, the pre-litigation report prepared by plaintiff's own doctor takes note of Margrave's "history of verbal compression fractures." Report of Howard D. Balensweig, M.D. ("Balensweig Report") at 10; *see also* Report of Robert M. Richman, M.D. ("Richman Report") at 3 (patient's X-rays show multiple compression fractures as early as 1982). The same physician also acknowledges that "[i]t is not usual for a patient to develop compression fractures as a result of prolonged sitting." Balensweig Report at 13; *see also* Richman Report at 3 (stating opinion that "prolonged sitting in an aircraft is [not] a competent producing cause of vertebral fracture" even in an osteporotic patient such as Margrave).

Plaintiff arguably finds solace in her doctor's conclusion that her prolonged sitting "did play a part in the development of the compression injuries." Balensweig Report at 13. The doctor's support for this bare conclusion, however, is that the injuries and the sitting "occurred during [the same] period of time." *Id.* This statement utterly ignores the possibility that Margrave's injury might have been caused by some trauma she suffered during the weeks she stayed in England before returning home for full medical treatment.[5] In addition, Dr. Balensweig calls his own opinion into serious doubt by citing recent medical literature which clearly indicates that a woman plaintiff's age is *more likely than not* to suffer from abnormal vertebrae compression, and would quite possibly be suffering from compression fractures of "spontaneous origin." *See id.* at 14.[6]

■ To establish proximate cause, plaintiff must demonstrate a close relationship between cause and effect. This requirement is not satisfied by the mere assertion of a chain of causation without evidentiary support. In this case, plaintiff has not "come forward with admissible evidence showing any genuine issue to be tried." *Barnett v. Howaldt*, 757 F.2d 23, 26 (2d Cir.1985); *see also Air France v. Saks*, 105 S.Ct. at 1345 (trier of fact should decide

---

**4.** Plaintiff has attempted to satisfy her obligation "to go beyond the pleadings," *see Celotex*, 106 S.Ct. at 2553, by submitting three documents relating to her medical condition: a copy of a 1984 hospital report; a copy of a report prepared for plaintiff's counsel by Howard D. Balensweig, M.D.; and a copy of a report prepared for *defendant's* counsel by Robert M. Richman, M.D. None of these documents have been sworn to or certified in lieu of oath, thus raising a significant question as to whether this Court should even be considering such "evidence" on a motion for summary judgment. *See* Fed.R.Civ.P. 56(c); 56(e).

**5.** It is undisputed that upon plaintiff's arrival in England, she was treated by physicians who dispensed painkillers, but failed to take X-Rays or detect plaintiff's compression fractures. *See*

Margrave Dep. at 24, 30. In the absence of proper medical treatment, plaintiff's activities during the trip may have aggravated or caused her injuries. *See id.* at 26 (plaintiff's testimony that she "just suffered" during her trip in England).

**6.** Even assuming that plaintiff's doctor's opinion as to causation is correct, all he is saying is that Margrave suffered a minor trauma on board Flight 176 which, in combination with plaintiff's "underlying osteoporosis," caused her present injuries. *See id.* at 13. That set of facts simply does not give rise to liability under the Warsaw Convention. *See Scherer*, 387 N.Y.S.2d at 581 (sitting in an airline seat during normal flight which aggravated passenger's thrombophlebitis was not an "accident" within the meaning of Article 17).

whether an accident caused the passenger's injury only when there is "contradictory evidence"). Accordingly, defendant is entitled to judgment as a matter of law.

Considerations of public policy and the history of the Warsaw Convention further support summary judgment disposition of this case. The Warsaw Convention, as amended by the Montreal Interim Agreement, 31 Fed.Reg. 7302, imposes a form of absolute liability on international air carriers for accidents which cause passenger injuries. Since liability under the Convention is nearly absolute, courts should be wary of reckless invocation of the Convention by eager but undeserving litigants. *Cf. Saks v. Air France,* 724 F.2d 1383, 1389–90 (9th Cir.1984) (Wallace, J., dissenting), *rev'd,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (intent of the Warsaw Convention was not to make carriers insurers of their passengers' well-being, but to create incentives for safe and economical air travel). In this regard, the plaintiff's burden of proving that an accident proximately caused his or her injury provides a significant limit on the scope of a carrier's liability under the Convention. *Air France v. Saks,* 105 S.Ct. at 1346. When a plaintiff fails utterly to satisfy that burden of proof, there is no sound justification for submitting the case to a jury.

## CONCLUSION

For the reasons stated herein, summary judgment is granted in favor of defendant British Airways, and plaintiff's claim is dismissed.

SO ORDERED.