Basharat A. JAMIL, Plaintiff,

v.

KUWAIT AIRWAYS CORPORATION,
Defendant.

Civ. A. No. 91–1044.

United States District Court,
District of Columbia.

Sept. 30, 1991.

Michael R. Goodstein, Rockville, Md., for plaintiff.

David P. Wohabe, New York City, for defendant.

MEMORANDUM OPINION
AND ORDER

SPORKIN, District Judge.

This case comes before the Court on Defendant's, Kuwait Airways, motion to

dismiss based on lack of subject matter jurisdiction and failure to state a cause of action upon which relief may be granted. Because the plaintiff, Basharat Jamil, has failed to state any cognizable claim, Kuwait Airways motion is granted.

BACKGROUND

■ On September 25, 1991, the Court conducted a hearing based upon the defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim under which relief may be granted. Fed.R.Civ.P. 12(b)(1), (6). In ruling on such a motion, the Court must construe the complaint in the light most favorable to the plaintiff and take its allegations as true. *McGowan v. Warnecke,* 739 F.Supp. 662 (D.D.C.1990). The alleged facts are as follows.

Plaintiff Jamil is a citizen of the United States. Defendant Kuwait Airways Corporation ("KAC") is a corporation established under the laws of Kuwait and wholly owned by the Government of Kuwait. Mr. Jamil has sued KAC for ten million dollars in compensatory and punitive damages he allegedly suffered as a result of a four day delay in transportation from Karachi, Pakistan to London, England and from London to New York.

Mr. Jamil's complaint provides too sparse a description from which to surmise how an injury of such magnitude is alleged. In an attempt to afford plaintiff every benefit of the doubt, however, the Court has considered the lengthy affidavit attached to the plaintiff's complaint and statements made by counsel in court. It appears from these that Mr. Jamil makes his claim as a "disappointed traveller"—combining the complaints of a traveller with those of a disappointed bidder.

In 1989, Mr. Jamil used a travel agent in the Washington, D.C. area to book passage on KAC to Pakistan. The purpose of the trip was to conduct certain negotiations for contracts with the Pakistani government. In April, 1989, KAC transported Mr. Jamil from the United States to Pakistan without incident. While in Pakistan, Mr. Jamil claims that a tentative "Memorandum of Understanding" concerning a government project was reached with an official of the Pakistani government. Mr. Jamil, however, still had to return home and finalize certain crucial documents to secure the funding for the project. He knew that it was imperative that such documents be completed by May 13, 1989.

It is at this point that Mr. Jamil's complaints as a traveller begin. While initially scheduled to return home on May 2, 1989, Mr. Jamil extended his stay until May 9. On his way home from Karachi to New York, Mr. Jamil, experienced an unexpected four day delay. The delay, if it occurred as alleged by plaintiff, admittedly resulted from less than ideal customer service practices by KAC. In Karachi, Mr. Jamil was refused entrance onto his plane because the on duty manager did not feel he had properly confirmed his newly scheduled flight. After the misunderstanding was resolved Mr. Jamil booked the next KAC flight available on May 12, 1989. During the intervening three days Mr. Jamil did not attempt to purchase a ticket on another carrier, but waited to return until one day before his deadline. Plaintiff admits that he had a credit card with him.

Mr. Jamil took the May 12, 1989 plane to London knowing that the first available connecting flight to New York was not until the next day, May 13. Mr. Jamil claims that because of a conspiracy based on animus that KAC personnel had developed against him in Karachi, he was bumped from his May 13, 1989 flight and was forced to book a flight on another carrier on May 14, 1989.

Mr. Jamil's claim then assumes the form of a disappointed bidder. When he arrived in Washington, plaintiff called an official in the Pakistani government to explain the delay. Mr. Jamil alleges that the official understood the delay not to be plaintiff's fault and arranged that the same contract should be awarded plaintiff in the near future. Were events to have ceased here, Mr. Jamil's injuries would have amounted to no more than those of a frustrated traveller.

At this point, however, other unforseen forces conspired against Mr. Jamil as well.

The government of Prime Minister Bhutto of Pakistan was dismissed, and the new government cancelled the entire project underlying the contract. Mr. Jamil claims that the project would not have been cancelled had KAC returned him to Washington one day earlier, and he should be awarded the entire value of that contract, over five million dollars, as damages.

DISCUSSION

### A. Jurisdiction

■ The first inquiry must be whether this Court has jurisdiction over the subject matter of plaintiff's claim. Both parties agree that this action is subject to the rules of the Warsaw Convention. These rules provide the plaintiff with four options as to where to bring an action:

> "An action for damages must be brought, at the option of the Plaintiff, in the territory of one of the High Contracting Parties, either before the court of domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the place of destination."

Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000 (hereinafter, "Warsaw Convention") at Art. 28(1).

Federal Rule of Civil Procedure 8(a) requires plaintiff to assert a valid basis for jurisdiction in its pleadings. Plaintiff does not deny KAC's claim that both its principal place of business and its domicile are in Kuwait. Nor does plaintiff describe in its pleadings where any contract for carriage was made or the exact "place of destination." Indeed it would seem that the places of destination for the first two flights in question were Karachi, Pakistan and London, England, destinations halfway around the world. Only the final flight, which plaintiff never took, was destined for an airport in the United States.

At oral argument, plaintiff's counsel asserted for the first time that a "contract for carriage" was made in Washington, D.C. because Mr. Jamil had called a local travel agent to book his flight. Even taking such an oral assertion to be adequate pleading, however, there are two problems with plaintiff's argument. First, the flights on which the alleged problems occurred were the return flights, and Mr. Jamil made his final return arrangements from Pakistan, not from the United States. Second, the Warsaw Convention clearly indicates that it is not the travel agent, but the location of the carrier's, KAC's, "place of business through which the contract was made" which controls. Plaintiff has made no allegations regarding the location of any of the KAC offices he used to book his flights. Thus, plaintiff has failed to properly plead jurisdiction.[1] Even were plaintiff to properly invoke the jurisdiction of this court, however, he has failed to state a claim upon which relief may be granted.

### B. Proximate Cause

■ The question of proximate cause may be decided by the court when there are active intervening causes. *Margrave v. British Airways*, 643 F.Supp. 510, 513 (S.D.N.Y.1986). *Margrave* was also a case also decided under the Warsaw Convention. The passenger in that case had sued her air carrier claiming that a delay in transport, caused by a bomb threat, had injured her back because she was forced to sit in her seat for a prolonged period of time. The court granted defendant's 12(b) motion, treating it as a motion for summary judgment, and found that "plaintiff's claim for damages depend[ed] on an attenuated chain of causation." *Id. citing Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). The same conclusion must be reached in the present case.

The chain of events which has led to Mr. Jamil's alleged loss is as long as it is unlikely. Tracing the claim of this disappointed traveler takes this court over three continents, through the policies of at

---

1. Plaintiff does ask this court to take diversity jurisdiction under 28 U.S.C. § 1332. Because Kuwait Airways is wholly owned by the Kuwait Government, however, it is a foreign state under 28 U.S.C. § 1603(b)(2), and jurisdiction under § 1332(a)(4) does not lie against a defendant who is a foreign state.

least two foreign governments and one election, and involves a time period spanning over a year.

I begin by noting that Mr. Jamil admits that he did not conclude a binding government contract in Pakistan, but needed to return to the United States in order to secure funding to cement his "Understanding." Even assuming that such 'details' as funding are a mere formality, I need only to look to the conduct of the plaintiff, himself, to find the next intervening cause. Knowing that his return to Washington by May 13 was imperative, Mr. Jamil still waited from May 9 until May 12 in Karachi to catch the next KAC flight. With over five million dollars riding on his prompt return, ordinary common sense would dictate using his credit card and booking a flight on another airline in that three day interim.[2]

Any remaining doubt as to intervening causation is laid to rest by merely reading the allegations in plaintiff's complaint. On his return, Mr. Jamil received promises that funding would be obtained for his project in the future. "In the meantime, the government of Prime Minister Bhutto was dismissed and the entire project was canceled." Plaintiff's Complaint at ¶ 5. It was the fall of the Bhutto government, over a year after Mr. Jamil's return, then, which caused his loss of the contract. Any damage which might have resulted from his late arrival in Washington would have amounted to nothing were it not for this final coup.

Mr. Jamil would have the court trace this entire causal chain and land the blame for his lost project squarely at the feet of KAC. I decline, however, plaintiff's invitation to find causation in the air. Such a determination would fly in the face of common sense and legal notions of proximate cause.

### C. Consequential Damages

■ Finally, I note that even had plaintiff made out a claim, the damages he seeks would be noncompensable as a matter of law. The rule in this jurisdiction is the traditional rule that damages are noncompensable unless they are the natural and foreseeable consequences of defendant's breach. *See Thorne v. White*, 103 A.2d 579 (App.D.C.1954); *Murphy v. O'Donnell*, 63 A.2d 340 (App.D.C.1948). An air carrier may well foresee that a four day delay can cause a variety of problems. Employees may miss work. Vacationers may miss relaxation time. No reasonable carrier, however, could foresee that such a delay would result in an intervening government coup that would in turn cause the abandonment of a five million dollar government project.

In addition, as previously mentioned, plaintiff was under a duty to mitigate his damages by paying for a flight on another airline instead of waiting until the final day of travel when so much was riding on his prompt arrival.[3]

### CONCLUSION

Because plaintiff has not properly plead the jurisdiction of this court and because plaintiff has failed to state a cause of action upon which relief may be granted, defendants motion to dismiss under Rule 12(b) is granted.[4]

---

**2.** When pressed on this point during argument plaintiff's counsel confessed that he had no idea why Mr. Jamil had not switched airlines sooner to mitigate his damages.

**3.** Plaintiff's claim for punitive damages is also improper under the Warsaw Convention. This Circuit's recent decision in *In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475 (D.C.Cir.1991), dictates that punitive damages are not available under the facts as alleged by plaintiff.

**4.** This case is the kind courts usually see Pro Se plaintiffs bringing. It is indeed surprising that a lawyer would associate himself with a claim that appears so frivolous. Indeed at oral argument counsel could point to no authority at all supporting his disappointed traveler theory.