**Julio de LOS RIOS, Plaintiff,**

v.

**NATIONSBANK, N.A., formerly American Security Bank, N.A., et al., Defendants.**

**Civil Action No. 95–0752.**

United States District Court, District of Columbia.

Dec. 14, 1995.

Robert James Jones, Falls Church, VA, for Julio de Los Rios.

George T. Manning, Jones, Day, Reavis & Pogue, Washington, DC, for Nations Bank, N.A., John/Mary Doe, Directors (1–100), John/Mary Doe Officers (1–100), John/Mary Doe Personnel (1–100).

Jack I. Heller, Washington, DC, for Pietro Barbi.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the court on motions to dismiss filed by the NationsBank Defendants and by Co–Defendant, Pietro Barbi.[1] Plaintiff's complaint alleges that the Defendants' breach of contract and negligent handling of bank accounts, assets, and investments belonging to the Peruvian Naval Commission proximately caused injury to the Plaintiff.

## FACTS

Plaintiff, Julio de los Rios, was a Rear Admiral of the Peruvian Navy who held the position of financial officer to the Peruvian Naval Commission ("PNC") in the United

---

1. Defendant Barbi fully adopts and incorporates into his motion the NationsBank Defendants' memorandum in support of their motion to dismiss.

States. From at least 1979 until sometime after 1993, the PNC maintained its bank accounts with the American Securities Bank ("ASB"), predecessor to the defendant NationsBank. Pursuant to an agreement between the PNC and the bank, any transactions involving PNC accounts, assets, funds, and investments required the signatures of two designated PNC officials. One of the two required signatories was the Plaintiff; the other required signature was that of Enrique Villagarcia, the PNC's Chief financial and accounting officer.

Shortly after Mr. Villagarcia assumed his post, he began embezzling funds from the PNC and the Republic of Peru. Plaintiff alleges that Mr. Villagarcia opened fraudulent accounts at ASB in the name of the PNC which required only one signature, that of Mr. Villagarcia, and transferred PNC funds, assets, and investments into those accounts.

Count I of Plaintiff's complaint asserts that ASB was negligent in that it failed to follow its own internal procedures, the agreed-upon "special procedures," and "sound reasonable commercial standards and practices," causing the bank to breach its contract with the PNC. Counts II through V allege that the accounts were opened, maintained, and concealed by Mr. Villagarcia by means of the negligent acts and fraudulent misrepresentations of Co–Defendants Pietro Barbi, Vice President of ASB, and other John/Mary Doe directors, officers, and personnel.

After the discovery of Mr. Villagarcia's fraud more than twelve years after it had begun, Plaintiff was convicted of negligence and disobedience in a Peruvian Military Court and imprisoned. He claims to have suffered financial and emotional damages and loss of reputation due to his trial, imprisonment, and resulting media coverage. He alleges that he has lost both his position as main academian in the Peruvian Military College and the opportunity to obtain future contracts for the publication of books on military strategy. Finally, Plaintiff claims that the military, the government, the media, and the citizens of Peru have launched a "retaliation and defamation campaign" against him.

Plaintiff's complaint alleges that the Defendants' fraudulent misrepresentations, negligence, and resulting breach of contract to PNC were the proximate cause of his conviction, imprisonment, emotional distress, and loss of status.

## ANALYSIS AND DECISION

### I. *STANDARD FOR A MOTION TO DISMISS.*

 In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept as true each of the allegations in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The Court may dismiss a complaint only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### II. *PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS' ALLEGED ACTS WERE THE PROXIMATE CAUSE OF HIS INJURIES.*[2]

 The proximate cause of an injury is one which, "in its natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Wagshal v. District of Columbia*, 216 A.2d

---

**2.** Ordinarily, proximate causation is a question of fact for the jury. *Hanna v. Fletcher*, 231 F.2d 469, 473 (D.C.Cir.), *cert. denied*, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956). Where it is clear that "reasonable men could draw but one conclusion from the facts alleged ...," negligence and proximate cause becomes an issue for the Court. *McGettigan v. National Bank of Washington*, 320 F.2d 703, 705 (1963); *Claytor v. Owens–Corning Fiberglas Corp.*, 662 A.2d 1374, 1382 (D.C.1995) (stating that proximate cause can be a "question of law for the court to consider, before the case even goes to the jury."). In addition, the case should be taken from the jury if the court determines that the chain of events leading to the harm "appears highly extraordinary in retrospect." *Lacy v. District of Columbia*, 424 A.2d 317, 321 (D.C.1980). *See also, Jamil v. Kuwait Airways Corp.*, 773 F.Supp. 482, 485 (D.D.C.1991) (decided under the Warsaw Convention).

172, 175 (D.C.1966) (quoting *Howard v. Swagart,* 161 F.2d 651, 655 (1947)). Proximate cause requires a showing that the plaintiff's injuries were "either a direct result or a reasonably probable consequence" of the acts. *District of Columbia v. Freeman,* 477 A.2d 713, 716 (1984) (quoting Standardized Civil Jury Instructions for the District of Columbia, No. 5.11 (Rev. ed. 1981)).

██ A defendant will be liable for injuries which were "foreseeably attributable to his or her conduct ..." *White v. United States,* 780 F.2d 97, 106 (D.C.Cir.1986) (quoting *Morgan v. District of Columbia,* 449 A.2d 1102, 1111 (D.C.1982), *vacated on other grounds,* 468 A.2d 1306 (D.C.1983)). Under District of Columbia law, proximate causation is not limited to the issue of foreseeability. *White,* 780 F.2d at 106. A defendant may be held liable for unforeseeable harm attributable to his or her conduct unless it appears to the court "highly extraordinary" that defendant's actions could have caused the injury in question. *Morgan v. District of Columbia,* 449 A.2d at 1111, *vacated on other grounds,* 468 A.2d at 1318 (stating that "[a] defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears 'highly extraordinary in retrospect'.").

██ Plaintiff claims that Defendant's misrepresentations and negligent failure to follow certain agreed-upon procedures caused: 1) ASB to breach its contract with the PNC and allowed Mr. Villagarcia's to continue in his thirteen year scheme to embezzle funds from the PNC; 2) the Peruvian Military to convict and imprison the Plaintiff under Peruvian law; 3) the Peruvian media and citizenry to defame him; 4) the Military College to discharge him, and 5) his publishers to refuse to do business with him. This series of intervening acts by Peruvian officials under Peruvian law, the media, the Peruvian citizenry, and Plaintiff's business creates a far too attenuated chain from the original act and breaks the chain of causation.

Even it were foreseeable that a Peruvian Military Officer might attempt to embezzle PNC funds, it is not reasonable to assume that ASB could foresee that other responsible officials would fail to exercise due diligence in monitoring the accounts, that Peruvian law would dictate criminal sanctions for negligent supervision, or that the Plaintiff's reputation would be subject to attack by the media and citizenry of Peru. Moreover, this unforeseeable chain of events appears "highly extraordinary in retrospect." *Lacy,* 424 A.2d at 320–21. Defendants cannot be held liable for the effects of such an attenuated chain of events. Accordingly, the Defendants' motions to dismiss are granted, and the Plaintiff's complaint is dismissed. An appropriate order follows this opinion.

### ORDER

The parties to this lawsuit have requested additional time to pursue settlement discussions relating to this matter beyond the time set forth in this Court's Order dated October 19, 1995. The Court hereby

**ORDERS** that the time within which Plaintiff may refile this lawsuit is extended to January 31, 1996. It is further

**ORDERED** that if Plaintiff does not refile the lawsuit on or before January 31, 1996, Plaintiff's Complaint will be deemed to have dismissed with prejudice.