Onna Lil Camenschic
SALERNO, Plaintiff,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

No. 82 Civ. 5316(MEL).

United States District Court,
S.D. New York.

April 19, 1985.

Herbert Lebovici, New York City, for plaintiff; Edward Cherney, New York City, of counsel.

Quirk and Bakalor, P.C., New York City, for defendant; Stephen K. Blunda, New York City, of counsel.

LASKER, District Judge.

Defendant Pan American World Airways, Inc. ("Pan Am") moves pursuant to Federal Rule of Civil Procedure 50(b) for an order setting aside a jury verdict and directing that judgment be entered in its favor. The issue presented is whether a bomb threat, the knowledge of which the jury found to have injured the plaintiff, constitutes an "accident" under Article 17 of the Warsaw Convention ("the treaty").[1]

Late in the evening of August 24, 1981 through the early morning hours of August 25, 1981 plaintiff Onna Lil Camenschic Salerno, (who was pregnant at the time), and her two children were passengers on Pan Am Flight 441 from Miami, Florida to Montevideo, Uraguay. Some time after the aircraft's departure Pan Am's ground personnel notified the cockpit crew that a telephone call had been received indicating a bomb had been placed on board the aircraft. The pilot subsequently radioed for permission to land in the Bahamas. However, since the runway was undergoing repair permission to land was denied and the craft returned to Miami International Airport, the point of its departure. While the plane was making its return flight, the passengers were notified of the change in itinerary. Further, as the evidence established and the jury must have found, in the commotion that followed at least some of the passengers, including Salerno, became aware of the fact that the flight attendants were searching the plane for a bomb. Soon after she acquired this knowledge Salerno began exhibiting the symptoms which led to her miscarriage approximately twenty four hours later.

The case was tried over four days to a jury. Two questions were put to the jury: (1) "Do you find that the plaintiff Onna Lil Salerno has proven by a preponderance of the evidence that the events aboard Pan Am Flight # 441 on August 24, 1981 and at the Miami Airport on August 25 proximately caused her miscarriage and/or emotional injury and distress? " and (2) (if the answer

to the first question is yes) "What is the amount of damages which you find Onna Lil Salerno is entitled to?" The jury answered yes to question number one and awarded Salerno $62,500.00 in damages. Thereafter Pan Am filed the instant motion.

While the motion was *sub judice* the Supreme Court granted *certiorari* in *Air France v. Saks*, —— U.S. ——, 105 S.Ct. 773, 83 L.Ed.2d 769 (1985) *granting cert. to* 724 F.2d 1383 (9th Cir.1984) "to resolve a conflict among the Courts of Appeals as to the proper definition of the word 'accident' as used in this international air carriage treaty." *Air France v. Saks*, —— U.S. ——, 105 S.Ct. 1338, 1340, 84 L.Ed.2d 289 (1985). On March 4, 1985 the Court decided the issue holding that "... liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 1345.

Both parties to this case have subsequently submitted letter-briefs as to their views of the effect of the *Air France* decision on this case. Salerno argues that her case falls clearly within the parameters of *Air France*. Apparently conceding that the events of August 1981 are encompassed within the Court's definition of an "accident", Pan Am argues only that "strong policy considerations", i.e., encouraging airlines to treat telephoned bomb threats seriously, distinguish this case from the recent Supreme Court decision.

We hold that Salerno's injuries were caused by an "accident" within the meaning of the Warsaw Convention because we conclude a bomb threat, which of course is "external to the passenger," is "an unexpected and unusual event", *Id.*, which is outside of the "usual, normal, and expected operation of the aircraft. *Id.* at 1346. Further, even if it were to be considered proper to create a public policy exception to the treaty, which we do not, the facts of this case do not provide justification for doing

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.A. § 1502.

658

so. Pan Am's public policy argument is premised upon a belief that its reaction to the bomb threat was responsible, which implicitly raises the defense of due care. This issue was specifically raised and rejected in the ratification of the treaty. *See* Lowenfeld and Mendelsohn, *The United States and the Warsaw Convention,* 80 HARV.L.REV. 497 (1967); *Air France v. Saks,* — U.S. at —, 105 S.Ct. at 1346 ("... an airline cannot defend a claim on the ground that it took all necessary measures to avoid the injury.") Further, contrary to the defendant's reasoning, it is arguable with reason that the exposure to liability for injuries caused during the response to a bomb threat, is more likely to promote the development of higher safety standards than to discourage it.

The motion is denied and judgment will be entered on the verdict.

Submit judgment on notice.