**Hessa SCHNEIDER, Plaintiff,**

v.

**SWISS AIR TRANSPORT COMPANY
LTD., Defendant.**

**Civ. No. 86–0278–B.**

United States District Court,
D. Maine.

May 16, 1988.

Warren M. Silver, Bangor, Me., for plaintiff.

Eugene C. Coughlin, Vafiades, Brountas & Kominsky, Bangor, Me., Michael J. Holland, Condon & Forsyth, New York City, for defendant.

## ORDER ACCEPTING MAGISTRATE'S RECOMMENDED DISPOSITION

CYR, Chief Judge.

The plaintiff sustained a knee injury aboard Swiss Air Flight 333, for which she seeks $75,000 in damages pursuant to the Warsaw Convention and the Montreal Agreement.[1] The defendant moves for summary judgment pursuant to rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, arguing that plaintiff's injury was not caused by an "accident" within the meaning of Article 17 of the Warsaw Convention.

The United States Magistrate recommended denial of the defendant's motion for summary judgment. The defendant objects to the magistrate's recommended disposition. The court undertakes *de novo* review of that portion of the recommended disposition to which timely objection has been made. 28 U.S.C. § 636(b)(1); Fed.R. Civ.P. 72(b).

## STATEMENT OF FACTS

The parties agree that on October 13, 1985, the plaintiff was en route from Tel Aviv, Israel, to Boston, Massachusetts, via Zurich, Switzerland, aboard Swiss Air Flight 333. The plaintiff, who is five feet tall and weighed approximately 250 pounds at the time of the incident, occupied an aisle seat.[2] Directly in front of the plaintiff sat two children who put their seats in full recline. A married couple, seated to plaintiff's left, frequently required access to the aisle. The gentleman left his seat as many as six times, and his wife got up "several" times. (Tr. at 23.)

The plaintiff claims to have asked the children seated in front of her to return their seats to the upright position so that

---

1. The official title of the Warsaw Convention is the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876. The Montreal Agreement, Cab # 18900, raises the liability limitations prescribed by the Warsaw Convention. Both are reprinted in 49 U.S.C.App. § 1502, note (1982).

2. Plaintiff was not assigned an aisle seat, but managed to get one by exchanging with another passenger.

she could get up and allow the couple to her left to get to the aisle. The children declined. Plaintiff then sought assistance from the children's father, who was seated across the aisle from the children. The father apparently refused to instruct his children to "straighten up and fly right"; their seats remained in full recline. Plaintiff then sought the assistance of a flight attendant, who is said to have advised the plaintiff that she could not help her. The defendant denies the plaintiff's allegations that she complained about the situation to her fellow passengers and to an airline representative. *See* Defendant's Answer to Complaint, *Schneider v. Swiss Air Transport Co.,* Civ. No. 86-278-B (D.Me. Oct. 17, 1986).

In order to enable the passengers to her left to get in and out of their seats, plaintiff says that she undertook to maneuver her person over the armrest of her seat. During one such maneuver, plaintiff claims that her knee snapped, causing sharp pain.[3] Plaintiff says that her knee discomfort has continued to this day.

Plaintiff goes on to describe the lack of cooperation she received from the airline employees.[4] For purposes of the present motion, only the facts surrounding the alleged "accident" need be discussed.

## DISCUSSION

The parties agree that the case is governed by the Warsaw Convention, as amended by the Montreal Agreement. Article 17 of the Convention provides:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damages

so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The parties also agree that the controlling interpretation of the term "accident" was given by the Supreme Court in *Air France v. Saks,* 470 U.S. 392, 405, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985). The Supreme Court held:

liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger. This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries.... where there is contradictory evidence, it is for the trier of fact to decide whether an "accident" as here defined caused the passenger's injury.... But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.

*Id.* at 405-406, 105 S.Ct. at 1345.

As the magistrate pointed out, the cases do not neatly distinguish between injuries resulting from unexpected or unusual events external to the passenger and those resulting from passenger reaction to normal aircraft operation.

Courts have not hesitated to find an Article 17 accident where bomb threats, terrorist attacks or hijackings are involved. *See Evangelinos v. Trans World Airlines, Inc.,* 550 F.2d 152, 154 (3d Cir.1977) *(en banc)* (terrorist attack); *Day v. Trans World Airlines, Inc.,* 528 F.2d 31, 33 (2d Cir.1975) (terrorist attack), *cert. denied,*

---

**3.** In its answer defendant denies that plaintiff injured her knee as she was attempting to get out of her seat. *See* Defendant's Answer to Complaint, at p. 1. However, in its statement of material facts the defendant states:

as Plaintiff was getting up from here (sic) seat to move into the aisle to let her fellow passenger out, she felt something snap in her left knee as she turned to move into the aisle. Tr. 11. Her knee became very painful and Plaintiff thought that she tore or broke something. Tr. 13.

Defendant's Material Facts, at 2.

**4.** Plaintiff and defendant agree that the flight attendant offered to obtain an ambulance, but explained that the plaintiff would have to wait an hour. The plaintiff declined the offer. Plaintiff also requested assistance with her carry-on bag. The flight attendant, according to the plaintiff, initially refused to assist but eventually did help the plaintiff with her bag.

 

429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *Salerno v. Pan American World Airways,* 606 F.Supp. 656 (S.D.N.Y.1985) (bomb threat); *Krystal v. British Overseas Airways Corp.,* 403 F.Supp. 1322, 1323 (C.D.Cal.1975) (hijacking).

Courts have found that there was no "accident" for Article 17 purposes where passenger injury occurred without any showing of abnormal operations of the aircraft or its equipment. *See Saks,* 470 U.S. at 395, 105 S.Ct. at 1340 (hearing loss caused during normal operation of aircraft's pressurization system); *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193 (3d Cir.1978) (ear injury with no evidence that change in cabin pressure was an unusual or unexpected happening).

The present case falls somewhere between the terrorist cases and the hearing loss cases. Plaintiff equates her situation to the *Oliver* case, in which an intoxicated passenger fell onto and injured a fellow passenger, and the court, in dicta, considered the incident an accident for Warsaw Convention purposes. *Oliver v. Scandanavian Airlines System,* 17 Av.Cas. (CCH) 18,823 (D.Md.1983). Defendant argues that the court should follow *Margrave v. British Airways,* 643 F.Supp. 510 (S.D.N.Y.1985). In *Margrave,* the plaintiff was forced to sit in a cramped position during a five-hour plane delay, which was caused in the first instance by a bomb threat and was extended by reason of a mechanical failure. There the court granted defendant's motion for summary judgment, because the plaintiff could not establish that her back pain was *proximately caused* by the delay in takeoff.

*Margrave* is distinguishable from the present case in several respects. First, the *Margrave* court was concerned primarily with causation. The plaintiff was a 74–year–old woman who had previously sustained compression fractures. In the present case the plaintiff claims not to have had a history of knee problems. (Tr. at 2–3). Second, in *Margrave* the plaintiff could have "abated her discomfort at any time during the five-hour delay simply by leaving the plane, or, at a minimum, complaining to British Airways personnel." *Id.* at 513 n. 3. In the present case, plaintiff

claims to have sought assistance from Swiss Air personnel, to no avail. Moreover, while the plane was in flight the plaintiff presumably lacked the primary option open to the plaintiff in *Margrave.*

Although there is a dispute as to whether the plaintiff sought and was denied assistance by Swiss Air personnel, "the full recline of a passenger's seat ... coupled with the passenger's refusal to raise the seat when requested to do so and the refusal of the flight attendant to intervene when requested to," *see* Magistrate's Recommended Disposition, at 10, could be considered by the fact-finders, *see Air France,* 470 U.S. at 405, 105 S.Ct. at 1345, to have been external to the passenger and beyond the usual, normal and expected operation of an aircraft, *Id.* at 406, 105 S.Ct. at 1345–46.

The court finds that genuine issues of material fact remain. *See* Magistrate's Recommended Disposition, at 10. Accordingly, the Magistrate's Recommended Disposition is ACCEPTED, and the defendant's motion for summary judgment is DENIED.