Richard C. GOTZ, Plaintiff,

v.

DELTA AIR LINES, INC., Defendant.

No. CIV. A. 96–12365.

United States District Court,
D. Massachusetts.

July 10, 1998.

Robert D. Cohan, Cohan, Rasnick, Myerson & Marcus, LLp, Boston, MA, for Plaintiff.

Peter J. Black, Bradley M. Henry, Meehan, Boyle & Cohen, P.C., Boston, MA, for Defendant.

*MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

LINDSAY, District Judge.

## INTRODUCTION

The plaintiff, Richard C. Gotz, has suffered torn rotator cuffs in his shoulders and seeks to hold Delta Air Lines, Inc. ("Delta") liable for those injuries under the provisions of the Warsaw Convention (the "Convention").[1] To succeed, Gotz must establish that (1) an accident (as defined by the Convention) occurred, and (2) the accident proximately caused his injuries. Gotz has moved for summary judgment, pursuant to FED. R. CIV. P. 56(b), on the first of these two elements of his claim. Delta has opposed this motion and has moved for summary judgment in its favor as to Gotz's entire claim.

## I. FACTS

The following facts are not in dispute and are gleaned from the complaint and affidavits and depositions filed with the cross motions for summary judgment.

On October 5, 1995, Gotz and his wife arrived in Boston from Paris, having connected in New York to a Delta Shuttle flight. Gotz boarded the connecting flight with a "heavy" carry-on bag and asked Victoria Lochiatto, the flight attendant stationed at the aircraft's front door, to stow his bag somewhere in the front of the plane. Lochiatto refused Gotz's request, citing various safety concerns, and directed Gotz to place his bag in an overhead compartment.

Gotz proceeded to his assigned row and lifted his bag to place it in the overhead compartment. While he was holding the bag over his head, the passenger seated beneath him in the aisle seat (the "aisle-seat passen-

ger") stood up, turned his back towards Gotz, and—with apparent disregard for Gotz's presence—extended his arm upward, presumably to retrieve something from the same overhead compartment in which Gotz was attempting to stow his bag. Gotz attempted to avoid striking the aisle-seat passenger by hyperextending his arms and retreating while bringing his bag to the floor. In so doing, he tore the rotator cuffs in his left and right shoulders.

## II. THE PARTIES' CONTENTIONS

Gotz has sued Delta under Article 17 of the Convention, which provides that:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018. The parties, therefore, have appropriately focused their arguments on (1) whether the aisle-seat passenger's sudden rise constitutes an accident under the Convention (a "Warsaw accident"), and (2) whether this accident proximately caused Gotz's injury.

Gotz contends that the aisle-seat passenger's sudden rise meets the Supreme Court's definition of a Warsaw accident. *See Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (defining a Warsaw accident as "an unexpected or unusual event or happening that is external to the passenger"). Gotz claims that his fellow passenger's conduct was both unexpected and unusual. Therefore, he argues, this "peculiar [and] sudden" movement, in combination with "the flight attendant's wholesale failure and refusal to assist [him] in any manner whatsoever," constitutes a Warsaw accident. Gotz has moved for summary judgment in his favor on this issue.

Delta counters by arguing that the aisle-seat passenger's action—reaching into an

---

**1.** The "Warsaw Convention" is the popular name for the Convention for the Unification of Certain Rules Relating to International Transportation by

Air, Oct. 12, 1929, 49 Stat. 3000, T .S. No. 876 (1934), note following 49 U.S.C.App. § 1502.

overhead compartment to retrieve an item—is a common and routine aspect of air travel. Furthermore, Delta argues, a Warsaw accident necessarily involves acts or omissions that are directly related to the operation of the aircraft. Delta says that the actions of Gotz's fellow passenger bear no relation to the aircraft's operation and, therefore, do not constitute a Warsaw accident. For these reasons, Delta contends that the court should enter summary judgment in its favor on Gotz's claim in its entirety.

## III. DISCUSSION

The standards governing motions for summary judgment are by now quite familiar. *See* FED. R. CIV. P. 56(b). The court must view the record in the light most hospitable to the party opposing summary judgment and determine whether there is a genuine issue of material fact. *See McCarthy v. Northwest Airlines,* 56 F.3d 313, 315 (1st Cir.1995). If no trialworthy issue exists, then the court must determine which party should prevail as a matter of law. *See id.*

In the case at hand, there is no dispute as to the facts. The court, therefore, will proceed to examine the effect and significance of those facts under the governing law.

■ The Convention provides its signatories with a uniform set of legal rules governing accidents occurring during international air travel. *See McCarthy,* 56 F.3d at 315–16. As noted above, under the Convention, the plaintiff must establish that (1) a Warsaw accident occurred and (2) the accident proximately caused his injury. *See Saks,* 470 U.S. at 396, 105 S.Ct. 1338; *Potter v. Delta Air Lines, Inc.,* 98 F.3d 881, 884 (5th Cir.1996) (plaintiff must demonstrate causation); *MacDonald v. Air Canada,* 439 F.2d 1402, 1405 (1st Cir.1971) (plaintiff must prove that there was an accident).

In *Saks,* the Supreme Court outlined the boundaries of an air carrier's liability under the Convention. Valerie Saks, the plaintiff, was a passenger on an international flight operated by the defendant airline, Air

France. As the aircraft descended into Los Angeles, Saks felt severe pressure and pain in her left ear. Although she still felt pain after the plane had landed, Saks deplaned without informing any Air France crew member or employee of her problem. Five days later, she consulted a physician, who informed her that she had become permanently deaf in her left ear. Saks then sued Air France for damages under Article 17 of the Convention, alleging that the *normal* cabin pressurization changes during landing had caused her deafness. *See Saks,* 470 U.S. at 394, 105 S.Ct. 1338.

■ The district court ruled that Saks could not recover damages unless she could show some malfunction or abnormality in the aircraft's operation. *See Saks v. Air France,* 724 F.2d 1383, 1384 (9th Cir.1984). Reversing this ruling, the Court of Appeals for the Ninth Circuit held that a showing of a malfunction or abnormality in the aircraft's operation was not a prerequisite to liability under the Convention. *See id.* Instead, the Ninth Circuit construed the word "accident" according to its "normal usage," by which the occurrence of an accident is viewed from the perspective of the person experiencing the injury.[2] *See id.* at 1385. The Supreme Court, however, disagreed. In defining a Warsaw accident as "an unexpected or unusual event or happening that is external to the passenger," the Court framed the issue to be whether Saks could properly define a Warsaw accident as an "injury . . . caused by the *normal operation* of the aircraft pressurization system." *Saks,* 470 U.S. at 405, 396, 105 S.Ct. 1338. The Court concluded that she could not. The Court also held that it is the cause of the injury, not merely the occurrence of the injury, that must qualify as an accident. *See id.* at 399, 105 S.Ct. 1338. *Saks* therefore teaches that, in order to characterize the aisle-seat passenger's sudden rise as a Warsaw accident, Gotz must proffer evidence tending to show that (1) an unusual or unexpected event that was external to him occurred, and (2) this event was a malfunc-

---

**2.** As an example, the court noted that even when an aircraft is operating normally, someone who falls down the steps of the aircraft still has what

is commonly referred to as an "accident." *See Saks,* 724 F.2d at 1385.

tion or abnormality in the aircraft's operation. The court examines Gotz's efforts.

## A. Unusual or Unexpected Event

■ As noted above, Gotz first must demonstrate that the aisle-seat passenger's sudden rise was an unusual or unexpected event. He concedes that passenger movement before the take-off of a commercial aircraft is common. He argues, however, that the aisle-seat passenger's sudden movement in this instance was not necessarily expected or usual.

Gotz's argument betrays a misreading of the law. In contradiction of the Supreme Court's directive, Gotz applies the word "unexpected" to the *occurrence of the injury* rather than to its *cause*. *See Saks*, 470 U.S. at 399, 105 S.Ct. 1338. He has offered no evidence tending to suggest that a passenger's rise to retrieve an item from an overhead compartment is either unusual or unexpected.[3] Gotz's claim that his fellow passenger's movements were unusual in this instance thus cannot support a claim under the Convention.[4] *See Craig v. Compagnie Nationale Air France*, No. CIV.A.93–55263, 1994 WL 711916 (9th Cir. Dec.21, 1994) (where plaintiff submitted no evidence that finding shoes on the floor between two seats was unusual or unexpected, the court could conclude that plaintiff had misapplied the word "unexpected" to the occurrence, rather than to the cause, of the injury).

Gotz relies on *Diaz Lugo v. American Airlines Inc.*, 686 F.Supp. 373 (D.P.R.1988), but that case does not advance his position that a plaintiff's subjective expectations should control whether a Warsaw accident has occurred. In *Diaz Lugo*, the plaintiff, Norma Figueroa, was filling out tourist entry cards aboard an aircraft and did not notice the flight attendant place a cup of coffee on

the tray in front of her. At the time, Figueroa, who had requested the coffee, was putting some documents between her left leg and her seat's left armrest. While she was still placing the papers, the flight attendant inquired whether she wanted cream and sugar with the coffee. With a slight head movement, Figueroa looked at the flight attendant and the coffee cup spilled on Figueroa's lap. Figueroa suffered burns in the pelvic and gluteal areas. *See id.* at 374–75.

The court found that this event constituted a Warsaw accident. The coffee spill was an unusual or unexpected event external to Figueroa: "[w]hen a person boards a plane, *he does not expect* that a cup of coffee will spill over his lap." *Id.* at 375 (emphasis added). *Diaz Lugo* does not imply, however, that the plaintiff's subjective expectations control. It is routine for a flight attendant to serve coffee on an aircraft. What is unusual and unexpected is for that coffee to spill. *See id.* (the usual operation of an airplane does not require the spilling of hot coffee on a passenger). Whether the coffee spills onto a passenger's lap, however, is altogether irrelevant to the unexpected nature of a coffee spill. Such an event is, as required by *Saks*, *objectively* unexpected. *Cf. Saks*, 470 U.S. at 399, 105 S.Ct. 1338 (the cause, not the occurrence, of the injury must be unexpected). Gotz's reliance on *Diaz Lugo*, therefore, is misplaced. *Diaz Lugo* stands for the simple proposition that Figueroa did not expect the unexpected. And although no passenger would expect that hot coffee should be spilled on her lap, it is the unusual nature of this event—not the passenger's subjective expectation—that qualified it as a Warsaw accident.

Perhaps as an alternative argument, Gotz posits that the sudden rise, *in combination with* the flight attendant's "wholesale failure and refusal" to assist him in any manner,

---

3. Delta, for its part, has proffered evidence that such an occurrence is neither unexpected nor unusual. In her affidavit, Lochiatto states that she has "personally observed dozens, perhaps hundreds, of passengers who have apparently forgotten, in their coat or stowed carry-on baggage, some personal item needed during the flight. Such travelers frequently reach up to retrieve such items so long as the flight remains at the gate." Affidavit of Victoria Lochiatto, ¶ 5.

4. Gotz emphasizes that the aisle-seat passenger's movement was sudden and without regard for Gotz's presence. Therefore, Gotz's more subtle argument may be that the *manner*—not merely the occurrence—of the passenger's rise was unusual and unexpected. This argument, too, fails because the passenger's action was not related to the operation of the aircraft. *See* Part II.B *infra.*

constituted a Warsaw accident. Gotz cites *Schneider v. Swiss Air Transport Company Ltd.,* 686 F.Supp. 15 (D.Me.1988), in support of this proposition. The plaintiff in *Schneider* asked children seated in front of her to move their seats to the upright position so that she could allow the passengers to her left to exit the row. The children refused, and their father declined to instruct them otherwise. The plaintiff then asked the flight attendant for assistance, but the attendant indicated that she could not help. The plaintiff, finally, undertook to maneuver herself over the armrest and, during one such maneuver, injured her knee. *See Schneider,* 686 F.Supp. at 15–16.

In denying the airline's motion for summary judgment, *Schneider* declined to characterize the children's fully reclined seats as unexpected or unusual events. *See Schneider,* 686 F.Supp. at 16; *see also Potter v. Delta Air Lines, Inc.,* 98 F.3d 881, 884 (5th Cir.1996) (holding that a fully reclined seat is not an unusual or unexpected event on an airplane). The court noted, in dictum, that the full recline of the seats, in combination with the refusals of both the passenger and the flight attendant to intervene, "could be considered by the fact-finders to have been external to the passenger and beyond the usual, normal and expected operation of an aircraft." *Schneider,* 686 F.Supp. at 17 (citations omitted).

*Schneider,* however, offers no refuge for Gotz's position. Lochiatto explains that Federal Aviation Regulations prescribed that Gotz's bag could only have been stored in an overhead compartment. *See* Lochiatto Aff., ¶¶ 3–4. Gotz, in response, does not challenge the propriety of Lochiatto's refusal to stow his bag in the front of the plane. Instead, he focuses on the failure of Delta's employees to help him place his bag in the overhead compartment.

This aspect of Gotz's argument bears two fatal defects. First, if Federal Aviation Regulations required that Gotz store his bag in an overhead compartment (and the matter is not disputed), then Delta's initial refusal was both appropriate and expected. On this point, therefore, Gotz cannot sustain his burden to establish that Delta operated in an abnormal manner: his position, reduced to its essentials, is that Delta's compliance with federal regulations created an abnormal condition. The mere statement of the proposition reveals its lack of merit. Second, Gotz sought no assistance in placing his bag in the overhead compartment. The Delta flight crew could not refuse a request that it had not received. Because the dictum in *Schneider* specifically posits an airline's refusal of assistance, *see Schneider,* 686 F.Supp. at 17, Gotz's reliance on *Schneider* is misplaced.

**B. Operation of the Aircraft**

As noted, *Saks* indicates that for Gotz to state a claim under the Convention, he must also establish that the event from which his injury arises involved some malfunction or abnormality in the aircraft's operation.[5] *See Saks,* 470 U.S. at 406, 105 S.Ct. 1338 (noting that when injury indisputably results from passenger's internal reaction to the "usual, normal, and expected operation of the aircraft," it has not been caused by a Warsaw accident). The question then is whether the actions of an independent, third party (i.e., the aisle-seat passenger) fall within the scope of an aircraft's operation. The court holds that they do not.

That the alleged accident must relate to the operation of the aircraft apparently is a notion that has its source in the treatise of Professor D. Goedhuis, the reporter for the drafting of the Warsaw Convention. *See* D. GOEDHUIS, NATIONAL AIR LEGISLATIONS AND THE WARSAW CONVENTION, THE HAGUE (1937). Professor Goedhuis reasoned that "[t]he carrier does not *guarantee* safety; he is only obliged to take all the measures which a good carrier would take for the safety of his passengers." *Id.* at 200 (emphasis in original). And although Professor Goedhuis did not anticipate widespread acceptance of his theo-

---

5. It would ordinarily be unnecessary for the court to reach this question, given the court's disposition of the question of whether the event resulting in Gotz's injury was unusual or unexpected. The particular nuance of Gotz's "unusual and unexpected" argument pointed out in note 4, *supra,* however, requires a discussion of the question of the "operation of the aircraft."

ry, *see id.* at 200, most courts have, in fact, adopted his interpretation of the word "accident." [6]

■ An event cannot fall within the operation of the aircraft if that event is not within the airline's purview or control. In *Price v. British Airways*, No. CIV.A.91–4947, 1992 WL 170679 (S.D.N.Y. July 7, 1992), the plaintiff consumed several alcoholic beverages and, after the aircraft had landed and taxied to the gate, he exchanged words with another passenger. A passenger—it is unclear which one—punched the plaintiff in the face, and the plaintiff suffered a bloody nose. *See id.* at *1. The court held that the incident bore no relation to the *"[d]efendant's* operation of the aircraft." *Id.* at *3 (emphasis added). The plaintiff's injuries, therefore, were not the result of an accident within the meaning of the Convention. *Id.*

In a similar case, *Stone v. Continental Airlines, Inc.,* 905 F.Supp. 823 (D.Haw.1995), a passenger struck the plaintiff without provocation. *See id.* at 824. The court held that while the definition of "accident" was to be applied flexibly, "the alleged accident must bear some relation to the *defendant's* operation of the aircraft." *Id.* at *827 (citing *Price v. British Airways*, 1992 WL 170679, *2 (S.D.N.Y.1992)) (emphasis added); *see also Warshaw v. Trans World Airlines, Inc.,* 442 F.Supp. 400, 413 (E.D.Pa.1977) (holding that plaintiff's loss of hearing was not result of a Warsaw accident but of "ordinary, anticipated and required programmed changes in the aircraft's operation . . . performed purpose-

fully under the careful control of the plane's crew").

Gotz has proffered no evidence tending to show that the incident out of which his claim arises involved Delta, or anyone other than himself. He did not seek help in placing his bag in the overhead compartment, and the aisle-seat passenger never touched him.[7] While the aisle-seat passenger's sudden rise might have precipitated Gotz's reaction, which, in turn, led to his injuries, the passenger's rise from his seat while the aircraft was still at the gate bears no relation to the operation of the aircraft. To hold otherwise would be effectively to construe the Convention as a statute imposing absolute liability for any harmful occurrence on an international flight. There is neither a reason nor authority for such a construction. *See Saks,* 470 U.S. at 403, 105 S.Ct. 1338 ("The records of the negotiation of the Convention support what is evident from its text: A passenger's injury must be caused by an accident, and an accident must mean something different than an 'occurrence' on the plane.").

Gotz has failed to establish a trialworthy issue as to whether the incident out of which his injury derived was a Warsaw accident. He has not demonstrated that the aisle-seat passenger's sudden rise was an unusual or unexpected event. He has not established that the passenger's rise was related to the operation of the aircraft or under the control of the airline. And he has conceded, as he must, that his injuries stemmed from his own

---

**6.** The Supreme Court itself cited Goedhuis's treatise in support of the idea that liability under the Convention attaches only when the plaintiff establishes that the alleged accident caused the injury. *See Saks,* 470 U.S. at 396, 105 S.Ct. 1338. The Ninth Circuit has noted, however, that Professor Goedhuis's suggestion was never included in the text of the Convention and has argued that *Saks* does not directly state that an accident must relate to the operation of an aircraft. *See Gezzi v. British Airways PLC,* 991 F.2d 603, 605 n. 4 (9th Cir.1993). The *Gezzi* court's reasoning focuses on the precise syntax of the text of the Convention, but ignores its clear import: "[W]hen the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Saks,* 470 U.S. at 406, 105 S.Ct. 1338.

**7.** This latter fact reflects Gotz's failure to establish that the event was "external" to him: whatever his reasons for making the movement he did, that movement—Gotz's own physical reaction—caused his injury. Gotz's internal reaction to a common event effectively precludes his claim under the Convention. *See Saks,* 470 U.S. at 405, 105 S.Ct. 1338 (internal reaction to expected operation of aircraft does not constitute a Warsaw accident); *Levy v. American Airlines,* No. CIV.A.90–7005, 1993 WL 205857, at *4 (S.D.N.Y. June 9, 1993) (injuries inflicted upon a prisoner who struggled with law enforcement agents while on an aircraft were not "external" to the passenger and could not be considered Warsaw accidents).

reaction to the passenger's rise—that the precipitating event was internal, not external, to him.[8]

## CONCLUSION

Some accidents have a quality of unexpectedness because of the actions of the victims. *See Saks v. Air France,* 724 F.2d 1383 (9th Cir.1984) (Wallace, J., dissenting). After recounting the facts of *Chutter v. KLM Royal Dutch Airlines,* 132 F.Supp. 611 (S.D.N.Y. 1955), wherein a passenger rose when he should have been sitting, went to the back of the plane, and stepped out the open door when the ramp crew had moved the stairs away, Judge Wallace declared: "The aircraft and the ramp crew worked perfectly; the passenger was the defective link." *See id.* at 1389. That is, in essence, the case before the court, although it would be harsh and inappropriate, of course, to describe Gotz's reactions as defective. Even so, those reactions, internally generated, constituted the "accident." There is no evidence that Gotz's fellow passenger acted in an unusual or unexpected manner, or that the aircraft operated abnormally. An accident occurring as this one did does not amount to a Warsaw accident.

Because Gotz has failed to frame this event as a Warsaw accident, the court denies his motion for summary judgement and grants Delta's motion for summary judgment.

SO ORDERED.

---

**8.** In light of Gotz's failure to meet the requirements of the first element of his claim under the Convention, the court need not evaluate his efforts to address the element of proximate causa-

tion. *See MacDonald v. Air Canada,* 439 F.2d 1402, 1405 (1st Cir.1971) (plaintiff must prove that there was an accident).