USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1120

 GREGORY LANGADINOS,

 Plaintiff, Appellant,

 v.

 AMERICAN AIRLINES, INC.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nancy Gertner, U.S. District Judge]

 Before

 Lipez, Circuit Judge,
 
 Coffin and Campbell, Senior Circuit Judges.
 
 
 
 
 Anthony R. Bott for appellant.
 Tory A Weigand, with whom Gary W. Harvey and Morrison, Mahoney 
& Miller were on brief for appellee.

January 6, 2000

 
 

 LIPEZ, Circuit Judge. Gregory Langadinos appeals from
the district court's order dismissing his amended complaint against
American Airlines, Inc. ("American"). The amended complaint
alleges that American violated the Warsaw Convention by continuing
to serve alcohol to an intoxicated passenger who then assaulted
Langadinos. American filed a motion to dismiss for failure to
state a cause of action, arguing, inter alia, that the Warsaw
Convention count was based on unsubstantiated, conclusory
allegations. The district court granted the motion to dismiss,
pursuant to Fed. R. Civ. P. 12(b)(6). We vacate and remand.
 I.
 "In the Rule 12(b)(6) milieu, an appellate court operates
under the same constraints that bind the district court, that is,
we may affirm a dismissal for failure to state a claim only if it
clearly appears, according to the facts alleged, that the plaintiff
cannot recover on any viable theory." Correa-Martinez v.
Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990); see also
Conley v. Gibson, 355 U.S. 41, 45-48 (1957). In making this
determination, we must accept the well-pled facts of Langadinos's
amended complaint as true and indulge every reasonable inference in
his favor. See Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). 
We state the facts, therefore, as Langadinos alleges them. 
 On June 13, 1996, Langadinos boarded an American Airlines
flight in Boston, bound for Paris. A few hours after take-off,
Langadinos approached a flight attendant for aspirin. The flight
attendant ignored Langadinos, and continued with her current chore:
spoon-feeding ice cream into the mouth of passenger Christopher
Debord. As Langadinos waited, Debord "stared in a conspicuous and
strange fashion" at him and whispered something into the flight
attendant's ear. 
 Later in the flight, Langadinos went to the lavatory. 
While he waited in line, Debord forcefully grabbed Langadinos's
testicles, causing "excruciating pain." Then, Debord grabbed
Langadinos's hand and pulled it to his own groin. Although
Langadinos reported the assault to the flight crew, he was
unsatisfied with their response. The flight attendant who had fed
Debord ice cream commented, "Chris is my friend; he is harmless." 
Despite the promise of a second crew member to have Debord arrested
upon arrival in Paris, the alleged assailant was not detained. 
 Langadinos filed a two-count complaint against American
in the district court for the District of Massachusetts, alleging
a common law tort and a breach of the Warsaw Convention. Before
American responded, Langadinos filed an amended complaint,
identical to the original in every respect but one: it included the
additional allegation, made on information and belief, that
American served alcohol to Debord just prior to the assault,
knowing that he was intoxicated and that his behavior was "erratic"
and "aggressive." 
 Rather than answer the amended complaint, American filed
a motion to dismiss for "failure of the pleading to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). The
district court dismissed the complaint in a margin order, "based on
the arguments in defendant's motion and memorandum." On appeal,
Langadinos argues that the district court erred in dismissing count
two of the amended complaint, which alleges a violation of the
Warsaw Convention. We agree. 
 II.
A. Requisites of a Warsaw Convention Claim
 Article 17 of the Warsaw Convention sets forth the
circumstances under which an international air carrier may be
liable for injuries to passengers. It provides:
 The carrier shall be liable for damage
 sustained in the event of death or wounding of
 a passenger or any other bodily injury
 suffered by a passenger, if the accident which
 caused the damage so sustained took place on
 board the aircraft or in the course of any of
 the operations of embarking or disembarking. 
(emphasis added). Although the Warsaw Convention does not define
the term "accident," the Supreme Court shed light on its meaning in
Air France v. Saks, 470 U.S. 392 (1985). The Court ruled that an
injury to the plaintiff's ear caused by the normal operation of the
cabin pressurization system was not an "accident" within the
meaning of the Warsaw Convention. See id. The Court held that
"liability under Article 17 of the Warsaw Convention arises only if
a passenger's injury is caused by an unexpected or unusual event or
happening that is external to the passenger." Id. at 405. When the
aircraft operates in a "usual, normal, and expected" manner, a
passenger is unable to recover. Id. at 406. 
 The Supreme Court's definition of "accident" is broad
enough to permit recovery for torts committed by fellow passengers. 
Indeed, the Saks Court cited lower court decisions recognizing
passenger-on-passenger torts as "accidents" for the proposition
that the accident requirement must be "flexibly applied." Id. Of
course, not every tort committed by a fellow passenger is a Warsaw
Convention accident. Where the airline personnel play no causal
role in the commission of the tort, courts have found no Warsaw
accident. See, e.g., Potter v. Delta Airlines, 98 F.3d 881, 883-84
(5th Cir. 1996) (finding no "accident" where injury in passenger
dispute over seat position took place without involvement of
airline personnel), abrogated on other grounds by El Al Israel
Airlines, Ltd. v. Tseng, 525 U.S. 155 (1999); Stone v. Continental
Airlines, 905 F. Supp. 823, 827 (D. Haw. 1995) (finding no
"accident" where one passenger punched second passenger). On the
flip side, courts have found Warsaw accidents where airline
personnel play a causal role in a passenger-on-passenger tort. 
See, e.g, Schneider v. Swiss Air Transp. Co., 686 F. Supp. 15, 17
(D. Me. 1988)("accident" when plaintiff injured by fellow
passenger's refusal to put seat upright because plaintiff was
denied assistance by flight attendant).
 Langadinos's claim survives under these standards. He
has alleged that (1) Debord appeared intoxicated, aggressive and
erratic, (2) American was aware of this behavior and (3) despite
this awareness, American continued to serve him alcohol. Serving
alcohol to an intoxicated passenger may, in some instances, create
a foreseeable risk that the passenger will cause injury to others. 
Indeed, the Supreme Court cited a case of this type as an example
of the flexible operation of the accident requirement. See Saks
470 U.S. at 405 (citing Oliver v. Scandinavian Airline Sys., 17 CCH
Av. Cas. 18,283 (Md. 1983) (Warsaw accident liability where airline
served alcohol to drunken passenger, who then fell and injured
fellow passenger)).
 Of course, Langadinos cannot prevail simply by proving
that American served Debord excessive alcohol. He will also have
to establish that he suffered a compensable injury and that
American's service of alcohol to the assailant was a proximate
cause of his injury. See Saks, 470 U.S. at 406 ("Any injury is the
product of a chain of causes, and we require only that the
passenger be able to prove that some link in the chain was an
unusual or unexpected event external to the passenger."). 
Recognizing that we can affirm the dismissal of the complaint only
"if it is clear that no relief could be granted under any set of
facts that could be proved consistent with the allegations," Hishon
v. King & Spalding, 467 U.S. 69, 73 (1984), we are not able to say,
at this stage in the proceedings, whether American bears causal
responsibility for the alleged assault. Moreover, the Warsaw
accident determination should be "flexibly applied after assessment
of all the circumstances surrounding a passenger's injuries." Saks,
470 U.S. at 405 (emphasis added). In this case, discovery will be
required before such an assessment can be made.
B. Defects in the Pleading
 American argues that even if serving excessive alcohol to
a passenger can create a Warsaw accident, Langadinos pled this
allegation with such generality that we should not credit it in
reviewing the decision to dismiss his complaint. The allegation of
over-serving is crucial, American contends, because Langadinos is
unable to state a Warsaw Convention "accident" claim without it.
 We agree with American that Langadinos's complaint could
not survive without a properly pled allegation of over-serving.
Other than the service of alcohol to Debord, Langadinos has not
alleged any action by American that even arguably led to his sexual
assault. Langadinos's claim that American flight attendants were
rude to him and that they "spoon-fed" ice cream to Debord does not
affix American with causal responsibility for an assault. 
Likewise, Langadinos's claim that the American crew treated him
poorly after the incident does not demonstrate that they played any
role in its cause. Without the allegation of over-serving,
therefore, American could not bear any causal responsibility for
Langadinos's injuries and there would be no Warsaw Convention
accident. 
 We disagree with American, however, that the charge of
over-serving was pled defectively. Langadinos alleged the
following in paragraph 17 of the amended complaint:
 On information and belief, just prior to
 the aforesaid Mr. Debord's above-described
 assault and battery upon Mr. Langadinos
 [American] served intoxicating liquors/
 intoxicants to said Mr. Debord and not
 withstanding his aggressive and erratic
 behavior and his evident state of diminished
 cognitive and physical capacity continued to
 serve Mr. Debord intoxicants, thereby
 foreseeably generating otherwise unnecessary
 risk of harm to all other passengers of Flight
 No. 146 . . . . Upon information and belief, 
 [American] continued to serve Mr. Debord
 alcohol, knowing that he was
 intoxicated . . . .
American asks us to disregard this allegation because it relies on
words and phrases like "erratic," "aggressive," and "diminished
cognitive and physical capacity," which American argues are
conclusory. In particular, American says that Langadinos failed to
describe precisely the conduct of Debord that was "erratic" or
"aggressive" or that demonstrated his "diminished capacity."
 American demands from Langadinos more detail in his
complaint than the Federal Rules of Civil Procedure require. The
pleading rules
 do not require a claimant to set out in detail
 the facts upon which he bases his claim. To
 the contrary, all the Rules require is 'a short
 and plain statement of the claim' that will
 give the defendant fair notice of what the
 plaintiff's claim is and the grounds upon which
 it rests. The illustrative forms appended to
 the Rules plainly demonstrate this.

Conley v. Gibson, 355 U.S. 41, 47-48 (1957). While defendants may
prefer highly detailed factual allegations, a generalized statement
of facts is adequate so long as it gives the defendant sufficient
notice to file a responsive pleading. See id.; see also Garita
Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir.
1992). 
 We have demanded greater factual detail in a complaint in
a few specific categories of cases. For example, we have followed
Rule 9(b)'s requirement that "[i]n all averments of fraud or
mistake, the circumstances constituting fraud or mistake shall be
stated with particularity." See Powers v. Boston Cooper Corp, 926
F.2d 109, 111 (1st Cir. 1991). Recognizing that charges of
discriminatory intent are difficult to disprove and can greatly harm
a defendant's reputation, we have required civil rights plaintiffs
to "outline facts sufficient to convey specific instances of
unlawful discrimination." Dartmouth Review v. Dartmouth College,
889 F.2d 13, 16 (1st Cir. 1989). We have also demanded greater
factual specificity for allegations of RICO violations, see Miranda
v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991), and allegations
of standing, see United States v. AVX Corp., 962 F.2d 108, 115 (1st
Cir. 1992). Apart from these "specialized areas not implicated here,
it is enough for a plaintiff to sketch an actionable claim by means
of 'a generalized statement of facts from which the defendant will
be able to frame a responsive pleading.'" Garita Hotel Ltd.
Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992)
(footnote omitted) (quoting 5A C. Wright & A. Miller, Federal
Practice & Procedure 1357 (1990)). Langadinos has met this
standard, putting American on notice that it is accused of serving
alcohol to an aggressive, erratic, and incapacitated passenger, even
though it knew he was intoxicated. 
 American repeatedly reminds us that Langadinos only
alleged the over-serving of alcohol in his amended complaint on the
basis of information and belief. A plaintiff may rely, however, on
an amended complaint, see, e.g., Chongris v. Board of Appeals, 811
F.2d 36, 38 (1st Cir. 1987), and, as American concedes, a plaintiff
can make allegations either on the basis of personal knowledge or
on "information and belief." Langadinos's attorney is entitled to
include such "information and belief" allegations in the complaint
as long as he had a good faith basis for doing so, based on the
reasonable inquiry that Fed. R. Civ. P. 11(b) requires. 
 III.
 For the reasons stated above, we conclude that Langadinos
has stated a valid claim under the Warsaw Convention. We therefore
VACATE the district court order dismissing the claim and REMAND for
further proceedings consistent with this opinion.