Consuelo A. **GARCIA RAMOS,** et al., Plaintiffs,

v.

**TRANSMERIDIAN AIRLINES,** Inc., et al., Defendants.

No. CIV. 04–1693JAF.

United States District Court, D. Puerto Rico.

Sept. 2, 2005.

---

Jose M. Nater–Vazquez, San Juan, PR, Saul Roman–Santiago, Saul Roman Law Office, San Juan, PR, for Plaintiffs.

Victor M. Rivera–Torres, Santurce, PR, Diego A. Ramos, Banco Popular de Puerto Rico, San Juan, PR, Roberto A. Camara–

Fuertes, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Mrs. Consuelo A. García ("Plaintiff") and her daughter, Neida Hernández García, filed the present complaint against Defendants, Transmeridian Airlines, Inc. ("TMA"); Air Santo Domingo, S.A., Inc. ("ASD"); SAP Group; Insurance Companies A, B and C; and two unknown persons, John Doe and Richard Roe alleging tortious conduct pursuant to the Warsaw Convention, 49 U.S.C. § 40105 (1997); Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141 (1990 & Supp.2001); and Article 1803 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141 (1990 & Supp.2001). *Docket Document No. 13.*

Defendant TMA moved for summary judgment. *Docket Document No. 20.* Plaintiffs did not file an opposition. Upon careful review of the pleadings and applicable case law, we grant Defendant TMA's motion.

### I.

### Factual and Procedural Synopsis

Unless otherwise indicated, we derive the following factual summary from the amended complaint, Defendant TMA's motion for summary judgment, and the submitted evidence. *Docket Document Nos. 13, 20, 23.*

Plaintiff is a resident of Río Piedras, Puerto Rico. Defendant TMA is a corporation organized under Texas law, with its principal place of business in Georgia. Defendant TMA charters and operates flights between various domestic and international locations. Defendant ASD is a corporation organized under Puerto Rico law, with its principal place of business in Carolina, Puerto Rico. Defendant SAP Group is a Dominican corporation and the parent company of Defendant ASD.

On June 2, 2003, Plaintiff boarded Air Santo Domingo Flight 803 at Luis Muñoz Marín International Airport in Carolina, Puerto Rico, bound for Las Américas International Airport in the Dominican Republic. Plaintiff sat in her assigned aisle seat.

After all flight passengers were seated, a flight attendant asked the passenger occupying the window seat in Plaintiff's row if she was willing to change seats with an unidentified male passenger. The passenger occupying the window seat agreed and crossed in front of Plaintiff to exit the row. While Plaintiff remained seated, the unidentified male passenger attempted to cross in front of Plaintiff to reach the window seat. As he moved to step past Plaintiff, the unidentified male passenger lost his balance and fell backwards onto Plaintiff, fracturing her arm in two places.

Plaintiff was escorted by airline personnel from the plane to an area hospital for treatment.

Plaintiffs filed their original complaint in the Court of First Instance of Puerto Rico on September 3, 2003. *Docket Document No. 1, Exh. 3.* Defendant TMA removed the action to federal court on July 9, 2004. *See Docket Document No. 1.* On July 7, 2005, Defendant TMA moved for summary judgment on the grounds that Plaintiffs' tort action does not satisfy the requirements of the Warsaw Convention. *Docket Document No. 20.* Plaintiffs did not file an opposition to Defendant TMA's motion.

### II.

### Motion for Summary Judgment Standard under Rule 56(c)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "we accept as true the

factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 62 (1st Cir.2004) (citing *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998)); *see also Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). We then determine whether the plaintiff has stated a claim upon which relief can be granted.

We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. Garcia–Llorens,* 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz,* 534 U.S. at 512–15, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514, 122 S.Ct. 992 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## III.

### Analysis

Defendant TMA moves for summary judgment on the grounds that Plaintiff did not suffer an accident under Article 17 of the Warsaw Convention and, therefore, cannot recover damages for her injuries.

*Docket Document No. 20.* Defendant TMA further submits that Plaintiff Neida Hernández–García's claims for emotional damages are not recoverable under the terms of the Convention. *Id.* Finally, Defendant TMA argues that each of Plaintiff's Commonwealth law claims are preempted by the Convention. *Id.* We address these issues separately.

### A. Article 17 of the Warsaw Convention

■ This case is governed by the Warsaw Convention, as amended by the Montreal Agreement.[1] Article 17 of the Convention provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damages so sustained took place on board the aircraft or in the course of any of the operation of embarking or disembarking.

49 U.S.C. § 40105. Under the Convention, the plaintiff must establish that (1) a Warsaw "accident" occurred, and (2) the accident proximately caused his injury. *See Gotz v. Delta Airlines, Inc.,* 12 F.Supp.2d 199, 201 (D.Mass.1998).

■ Article 17's language is not a model of clarity, however, and courts have often struggled with the meaning of the term "accident." *See, e.g., El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155, 172, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); *Air France v. Saks,* 470 U.S. 392, 397–400, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985); *Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 70–71 (1st Cir.2000); *Gotz,* 12 F.Supp.2d at 201–05; *and Schneider v. Swiss Air Transport Co.,* 686 F.Supp. 15, 16–17 (D.Me.1988). The Su-

---

1. At all times relevant to the complaint, the United States and the Dominican Republic were both High Contracting Parties to the Warsaw Convention. *See* U.S. Dep't of State, Treaties in Force 342 (1999).

preme Court shed light on the meaning of the term "accident" in *Saks*. The Court held that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *See Saks*, 470 U.S. at 406, 105 S.Ct. 1338; *see also Langadinos*, 199 F.3d at 70. When the aircraft operates in a "usual, normal, and expected" manner, a passenger is unable to recover for any injury that may result from the usual, normal, and expected circumstances of international air travel. *Saks*, 470 U.S. at 406, 105 S.Ct. 1338.

■ In order to characterize the injury-causing event as a Warsaw accident, then Plaintiff must proffer evidence demonstrating that (1) an unusual or unexpected event that was external to the Plaintiff occurred, and (2) the event was a malfunction or abnormality in the aircraft's operation. *See Gotz*, 12 F.Supp.2d at 201–02.

### 1. *Unusual or Unexpected Event*

Defendant TMA argues that Plaintiff's injuries were not the result of an "unexpected" or "unusual" event. *Docket Document No. 20*. Defendant TMA further contends that her injury was the result of her own internal reaction to the normal operation of the aircraft. *Id.*

The notion that Plaintiff's injury was a result of her an internal reaction is clearly untenable. In *Saks*, the Court held that the Plaintiff's injuries resulted from an internal reaction because the normal pressurization of the cabin caused her to become permanently deaf in her left ear. *Saks*, 470 U.S. at 405–06, 105 S.Ct. 1338. Such an injury results from some internal infirmity and cannot be attributed to the defendant under the Warsaw Convention. *Id.; see also El Al*, 525 U.S. at 172, 119 S.Ct. 662 (quoting *Saks* for the principle that no accident occurs when the injury indisputably resulted from the passenger's

own internal reaction to the usual, normal, and expected operation of the aircraft). The present case is obviously different, however, where Plaintiff's injuries resulted from a physical collision with another passenger. Such an event is quintessentially external.

We turn then to the crux of the matter, whether a passenger falling onto another passenger is an unusual or unexpected event. The only requirement is that the accident is the cause of the injury rather than the injury itself being an accident. *See Saks*, 470 U.S. at 399, 105 S.Ct. 1338 ("The text of the Convention thus implies that, however we define 'accident,' it is the *cause* of the injury that must satisfy the definition rather than the occurrence of the injury alone."). The definition of "accident" within the terms of the Convention is broad enough to permit recovery for torts committed by fellow passengers. *See Langadinos*, 199 F.3d at 70.

■ An unnamed passenger falling onto Plaintiff is certainly an accident in the sense of being an "unexpected or unusual event." In *Maxwell v. Aer Lingus Ltd.*, the court held that "[i]n weighing the vicissitudes of modern day air travel, the hazard of being struck by a falling bottle surely ranks on a par with that of being bumped by a stumbling drunk or a reclining seat, events that have been found to be an Article 17 'accident.'" 122 F.Supp.2d 210, 211 (D.Mass.2000) (citing to *Schneider*, 686 F.Supp. at 17). While a reasonable passenger would expect some jostling or other physical contact when other passengers are attempting to reach their seats, a reasonable passenger would not expect a fellow passenger to fall on top of him. The fall, though a known risk, is not an expected or usual event. Accordingly, we find that Plaintiff suffered her injuries as a result of an unexpected or unusual event

that satisfies the first prong of the Warsaw "accident" analysis.

### 2. *Operation of the Aircraft*

■ The second prong in the "accident" analysis is whether the unexpected or unusual event was a malfunction or abnormality in the aircraft's operation. *Gotz,* 12 F.Supp.2d at 203. The notion that the alleged accident must relate to the operation of the aircraft has its source in the treatise of Professor D. Goedhuis, the reporter for the drafting of the Warsaw Convention. *Id.* Professor Goedhuis reasoned that "[t]he carrier does not *guarantee* safety; he is only obliged to take all the measures which a good carrier would take for the safety of his passengers." D. GOEDHUIS, NATIONAL AIR LEGISLATIONS AND THE WARSAW CONVENTION, THE HAGUE (1937). This view has been adopted by the courts, *see Saks,* 470 U.S. at 396, 105 S.Ct. 1338, along with the attendant acknowledgment that the Warsaw Convention does not impose a per se rule of liability on an air carrier for every occurrence that results in a passenger injury. *See Maxwell,* 122 F.Supp.2d at 212 (citing to *Saks,* 470 U.S. at 405–06, 105 S.Ct. 1338). Accordingly, an event does not fall within the "operation of the aircraft" if that event is not within the airline's purview or control. *Gotz,* 12 F.Supp.2d at 204; *see also Stone v. Cont'l Airlines, Inc.,* 905 F.Supp. 823, 827 (holding that while the definition of "accident" is applied flexibly, "the alleged accident must bear some relation to the *defendant's* operation of the aircraft").

In *Gotz,* the plaintiff was attempting to put a heavy bag in the overhead compartment when the aisle-seat passenger suddenly stood up, causing plaintiff to step backward and tear his rotator cuff. 12 F.Supp.2d at 200. Though the airline had

specifically ordered plaintiff to place the bag in the overhead compartment, the court found no evidence to show that the incident was within the airline's purview or control. *Id.* at 204 ("He did not seek help in placing his bag in the overhead compartment, and the aisle-seat passenger [who startled the plaintiff] never touched him."). Because the aisle-seat passenger's standing up had no relation to the operation of the aircraft, the plaintiff's claim was denied. *Id.*

■ We see no reason to deviate from *Gotz's* rationale or holding. The passenger stepping over Plaintiff had no relation to the operation of the aircraft, nor did it require the aid of any flight crew personnel. Unlike cases where there was some direct flight crew involvement, there was none here that would indicate that the accident was caused by the operation of the aircraft. *Cf. Maxwell,* 122 F.Supp.2d at 213 (holding that the flight crew was involved with an injury resulting from items falling from an overhead bin because the cabin crew is responsible for securing the bins before takeoff); *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 143 (2d Cir.1998) (concluding that a flight attendant applying a scalding compress to alleviate a minor's earache was a Warsaw accident); *Husain v. Olympic Airways,* 116 F.Supp.2d 1121, 1132–33 (N.D.Cal.2000) (finding that a flight attendant's failure to move a passenger to another seat after he indicated that he needed to be moved was a Warsaw accident); *Diaz Lugo v. Am. Airlines, Inc.,* 686 F.Supp. 373, 375 (D.P.R.1988) (spilling coffee on a passenger's lap is a Warsaw accident). There is no evidence that anyone ever sought the aid of the flight crew in what is an otherwise routine event: sitting down.[2] What's

---

**2.** We further note that Plaintiff's injuries could have been easily avoided had she politely stood up from her seat to let the unnamed

passenger enter the row. Such is common courtesy.

more, a flight crew is in no better position to detect and avoid the dangers inherent in walking and sitting down than the passengers. *Cf. Maxwell,* 122 F.Supp.2d at 213 ("An airline simply cannot by admonitory messages shift the onus of policing the proper stowage of overhead items from the aircraft's crew to the flying public, which is neither suited nor inclined to the task."). Passengers are both suited and inclined to this task.

Because the assistance of the flight crew was never sought and because there was nothing about the circumstances that would naturally require the assistance of the crew, there was no malfunction or abnormality in the aircraft's operation.[3] Accordingly, there was no "accident" as envisioned by the Warsaw Convention, and Plaintiff's Warsaw Convention claim is denied.

### B. *Plaintiff Hernández's Emotional Injuries*

█ Defendant TMA moves for summary judgment on Plaintiff Hernández–García's claim for emotional damages on the grounds that emotional damages are unavailable under the Warsaw Convention. *Docket Document No. 20.* The Supreme Court expressly held in *Eastern Airlines, Inc. v. Floyd* that damages for purely mental injuries are not recoverable. 499 U.S. 530, 534, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Therefore, Plaintiff Hernández' claim for purely emotional damages is unavailable under the Warsaw Convention.

### C. *Plaintiff's Commonwealth Law Claims*

█ Finally, Defendant TMA moves for summary judgment on Plaintiff's Puerto Rico law claims, asserting that such claims are preempted by the Warsaw Convention. *Docket Document No. 20.* In *El Al,* the Court noted that the Convention's preemptive effect is clear and broad: the treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty. *El Al,* 525 U.S. at 175, 119 S.Ct. 662; *see also Eastern Airlines,* 499 U.S. at 552, 111 S.Ct. 1489 ("We conclude that an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury."). Because Plaintiff cannot establish liability under the treaty, all of her Commonwealth law claims are preempted.

### IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendant's motion for summary judgment. *Docket Document No. 20.* Judgment shall be entered dismissing the complaint filed herein.

**IT IS SO ORDERED.**

---

**3.** Plaintiff alleged in her complaint that the injury-causing passenger was "obese" and "wearing a cast on one leg." *Docket Document No. 13.* During her deposition, however, she admitted that she "didn't see any cast," that he had no crutches or cane, and she gave no indication that the unnamed passenger was overweight. *Docket Document*

*No. 23, Exh. 1.* Plaintiff has submitted no further evidence to substantiate the allegations in her complaint. Accordingly, we conclude that there was nothing about the unnamed passenger's physical condition that would have alerted the flight crew to a potential danger, so there was no dereliction of duty.