Noreen MAXWELL

v.

**AER LINGUS LIMITED**

**Civil Action No. 99–11185–RGS.**

United States District Court,
D. Massachusetts.

Nov. 15, 2000.

*MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUM-
MARY JUDGMENT*

STEARNS, District Judge.

Noreen Maxwell seeks compensation for injuries she suffered when she was struck on the head by three liquor bottles dislodged from an overhead bin during the disembarkation of an Aer Lingus flight at Shannon Airport in Ireland. At issue is the meaning of the word "accident" as it is used in Article 17 of the Warsaw Convention. Both Maxwell and defendant Aer Lingus move for summary judgment.

*BACKGROUND*

Noreen Maxwell boarded Aer Lingus Flight 132 in Boston on April 23, 1997, bound for Shannon Airport in Ireland. It is undisputed that, on arrival at the gate in Shannon, an unidentified fellow passenger opened the luggage bin above Maxwell's seat, causing a bag of liquor bottles to drop on her head. The bottles did not belong to Maxwell nor had she stowed them in the overhead bin. Aer Lingus, as a matter of practice, warns passengers to use caution when opening overhead bins (the warning is given twice before departure, and again as passengers prepare to disembark).

*DISCUSSION*

The sole issue on summary judgment is whether Maxwell was the victim of an "accident" within the meaning of Article 17 of the Warsaw Convention.[1] Article 17 provides that:

---

**1.** The Warsaw Convention provides the exclusive remedy in this case. *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ("[R]ecovery for a personal injury suffered on board [an] aircraft or in the course of any of the operations of embarking or disembarking, if not available under the Convention, is not available at all.")

[t]he carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018. In the leading American case involving the interpretation of Article 17, the United States Supreme Court held that:

liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger.... But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.... This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries.... In cases where there is contradictory evidence, it is for the trier of fact to decide whether an "accident" as here defined caused the passenger's injury.

*Air France v. Saks,* 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). In commenting on *Saks,* the First Circuit Court of Appeals, insofar as pertinent to this case, observed that:

[t]he Supreme Court's definition of "accident" is broad enough to permit recovery for torts committed by fellow passengers. Indeed, the *Saks* Court cited lower court decisions recognizing passenger-on-passenger torts as "accidents" for the proposition that the accident requirement must be "flexibly applied." Id. Of course, not every tort committed

by a fellow passenger is a Warsaw Convention accident. Where the airline personnel play no causal role in the commission of the tort, courts have found no Warsaw accident.. See, e.g., *Potter v. Delta Air Lines,* 98 F.3d 881, 883–84 (5th Cir.1996) (finding no "accident" where injury in passenger dispute over seat position took place without involvement of airline personnel), abrogated on other grounds by *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); *Stone v. Continental Airlines,* 905 F.Supp. 823, 827 (D.Haw.1995) (finding no "accident" where one passenger punched second passenger). On the flip side, courts have found Warsaw accidents where airline personnel play a causal role in a passenger-on-passenger tort. See, e.g., *Schneider v. Swiss Air Transp. Co.,* 686 F.Supp. 15, 17 (D.Me.1988) ("accident" when plaintiff injured by fellow passenger's refusal to put seat upright because plaintiff was denied assistance by flight attendant).

*Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 70 (1st Cir.2000).[2]

What Maxwell experienced was certainly an accident in the sense of being an "unexpected or unusual event." While a reasonable passenger would expect some shifting of the contents of an overhead bin, particularly during a turbulent flight, she would not expect, as an ordinary incident of the operation of the aircraft, to be struck on the head by a falling object when the bin above her seat is opened by a fellow passenger. In weighing the vicissitudes of modern day air travel, the hazard of being struck by a falling bottle surely ranks on a par with that of being bumped by a stumbling drunk or a reclining seat, events that have been found to be Article 17 "accidents."[3] An event may be a foreseeable,

---

**2.** The Supreme Court in *Saks* made clear that "cause" is to be defined expansively. "Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." 470 U.S. at 406, 105 S.Ct. 1338.

**3.** See *Oliver v. Scandinavian Airlines Sys.,* 17 CCH Av. Cas. 18,283 (D.Md.1983); *Schneider*

**212**

or even accepted risk of a given activity, while at the same time being "unexpected." A collision is a known risk of driving an automobile, but it is not an expected or intended event. If it were, very few of us would drive. Thus, when a collision occurs, we speak of it as an "accident" in the sense of the event being fortuitous. While a legal term, particularly one used in a treaty, can have its own lexical meaning, the word *"accident,"* as used in the Warsaw Convention has, as the Supreme Court observed in *Saks*, the same everyday meaning in French (the official language of the Convention) as it does in English. *Saks*, 470 U.S. at 399–400, 105 S.Ct. 1338. Thus, what happened to Noreen Maxwell was an "unexpected or unusual event or happening."

█ Whether it was a compensable accident under the Convention is another issue.[4] The Warsaw Convention, as *Saks* makes clear, does not impose a *per se* rule of liability on an air carrier for every occurrence that results in an injury to a passenger. See *Saks*, 470 U.S. at 405–406, 105 S.Ct. 1338 (distinguishing causes that are "accidents" from causes that are "occurrences"). Rather, it reaches only those injurious happenings that result from risks that are "characteristic of air travel" in the sense of having some relationship to the operation of the airplane. At one end of the spectrum, cases in which liability is always found are those in which airline personnel have either facilitated a passenger's tort or have themselves committed a tort in connection with the operation of the flight. These include the service of alcohol to an obviously inebriated and assaultive passenger, the negligent application of a scalding compress to a child's ear, the failure to respond to an ailing passenger's pleas for help, the negligent spilling of hot coffee on a passenger's lap, the forcing of a lavatory door resulting in injury to the occupant, and the negligent failure to remove a hypodermic needle from a passenger seat cushion.[5] At the other end of the spectrum are cases in which the accident has no relationship to the operation of the aircraft, or cases in which the injury is caused by the passenger's internal reaction to the ordinary operation of the plane. In these cases, liability is almost never found. Examples include a spontaneous fistfight between fellow passengers, a false accusation of drug use resulting in a passenger's arrest after disembarkation, and an uncommon physical reaction to cramped seating or cabin pressurization.[6] The reason liability is not imposed is because these latter "accidents" involve events or conditions outside of an airline's purview or control. In the middle of the spectrum are highjacking and terrorism cases, which courts uniformly hold to be "accidents"

---

*v. Swiss Air Transport Co.*, 686 F.Supp. 15 (D.Me.1988).

4. "The cardinal purpose of the Warsaw Convention, we have observed, is to 'achieve uniformity of rules governing claims arising from international air transportation.' ... A complementary purpose of the Convention is to accommodate or balance the interests of passengers seeking recovery for personal injuries, and the interests of air carriers seeking to limit potential liability. Before the Warsaw accord, injured passengers could file suits for damages, subject only to the limitations of the forum's laws, including the forum's choice of law regime. This exposure inhibited the growth of the then-fledgling international airline industry. Many international air carriers at that time endeavored to require passengers, as a condition of air travel, to relieve or reduce the carrier's liability in case of injury." *El Al Israel Airlines*, 525 U.S. at 169–170, 119 S.Ct. 662 (citations omitted).

5. See *Tsevas v. Delta Air Lines, Inc.*, 1997 WL 767278 (N.D.Ill., Dec.1, 1997); *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138 (2d Cir. 1998); *Husain v. Olympic Airways*, 116 F.Supp.2d 1121 (N.D.Cal.2000); *Diaz Lugo v. American Airlines, Inc.*, 686 F.Supp. 373 (D.P.R.1988); *Laor v. Air France*, 31 F.Supp.2d 347 (S.D.N.Y.1998); *Waxman v. C.I.S. Mexicana de Aviacion, S.A. de C.V.*, 13 F.Supp.2d 508 (S.D.N.Y.1998).

6. *Price v. British Airways*, 1992 WL 170679 (S.D.N.Y., July 7, 1992); *Curley v. American Airlines, Inc.*, 846 F.Supp. 280 (S.D.N.Y. 1994); *Abramson v. Japan Airlines Co.*, 739 F.2d 130 (3d Cir.1984); *Saks*, supra.

under the Convention.[7] Liability is imposed in these cases not because the carrier is blamed for the criminal acts of terrorists, but because terroristic acts are, sadly enough, held to be a risk characteristic of modern day air travel. Liability for injuries resulting from that risk is allocated to the carrier for the simple reason that the carrier is in a far superior position than are passengers to institute protective safeguards. *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 34 (2d Cir.1975). The unexpected event, in other words, while not fully within the carrier's control, is not wholly beyond the ability of the carrier to influence.

■ It remains to locate Maxwell's experience on the spectrum. More precisely, was her injury caused by a risk attendant to air travel? Airlines provide overhead bins as an amenity for passengers. Airlines have the authority, and most, including Aer Lingus, exert it, to regulate the number and size of personal articles that passengers are permitted to carry aboard the plane. While passengers are permitted, and in most instances required, to place these items in the overhead bins, this is done under the supervision of the cabin crew who are responsible for securing the bins before takeoff. The attendants may perform this duty well or badly, but they have unquestioned authority to forbid passengers from attempting to stow articles in a fashion that might endanger themselves or other passengers. The routine warnings cautioning passengers about the safe storage of overhead items, while presumably sufficient to insulate the carrier from liability for an injury caused by a passenger's own negligence, do not immunize it when the injury is caused by the negligence of another passenger. An airline simply cannot by admonitory messages shift the onus of policing the proper stowage of overhead items from the aircraft's crew to the flying public, which is neither suited nor inclined to the task.

### ORDER

For the foregoing reasons, Maxwell's motion for partial summary judgment is *ALLOWED.* Aer Lingus's motion for summary judgment is *DENIED.* The matter will be scheduled for trial on the issue of damages.

SO ORDERED.

---

7. See cases cited in *Saks,* 470 U.S. at 405, 105 S.Ct. 1338. In *Wallace v. Korean Air,* 214 F.3d 293 (2d Cir.2000), the Second Circuit Court of Appeals held, albeit in a "close case," that the open sexual molestation of a sleeping passenger by her seatmate in the cramped economy cabin of the plane, under the nose of the attending cabin crew, was a presumably preventible "accident" under the Convention. Id. at 300.