**Jang Sool KWON, Plaintiff,**

v.

**SINGAPORE AIRLINES, Defendant.**

**No. C 02–02590BZ.**

United States District Court, N.D. California.

Aug. 26, 2003.

Thomas J. Boyle, Law Offices of Thomas J. Boyle, Hyunsoo Kenneth Ahn, Law Offices of H. Kenneth Ahn, San Francisco, CA, Plaintiff.

Kevin R. Sutherland, Roderick D. Margo, Samantha Faith Spector, Condon & Forsyth LLP, Los Angeles, CA, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ZIMMERMAN, United States Magistrate Judge.

In this action, plaintiff Jang Sool Kwon seeks damages from defendant Singapore Airlines for injuries Dr. Kwon allegedly received during the boarding process for Singapore Airlines flight number SQ0015 in San Francisco, California.[1] The parties agree that this action is exclusively governed by the Warsaw Convention.[2]

---

1. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

2. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Concluded at Warsaw, Poland, October 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, 3014, T.S. No. 876, reprinted in note following 49 U.S.C. § 40105.

This case was bifurcated for trial. Trial of all liability issues, including defenses to liability, commenced on July 28, 2003. Having considered and weighed all the evidence and having assessed the credibility of the witnesses, I now make these findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

On April 28, 2001, after purchasing an airline ticket in California, Dr. Kwon boarded flight number SQ0015 in San Francisco, California to travel to Korea. The plane was a A340–300E Celestar. Dr. Kwon's assigned seat, 59D, was in the economy class section in the rear of the aircraft. The economy section of the plane had two aisles, with two seats on each side of the plane and three seats in the middle of the plane.

There were six flight attendants, including Mr. Colin Kam, the chief steward, stationed in the economy class section of flight number SQ0015 during boarding. The crew members are responsible for, among other things, assisting passengers who need help in stowing their luggage in the overhead bins. Two flight attendants were stationed in each aisle at row 31, at row 40 and at row 49. During boarding, flight attendants are supposed to remain at their stations, but may move around near their stations to assist passengers. Defendant has a policy that allows economy class passengers to bring on board one piece of carry-on baggage, which does not exceed seven kilograms and 115 total centimeters.

Dr. Kwon was in the first group of passengers, after those needing special assistance, boarding the economy section of the aircraft. As Dr. Kwon made his way to his seat, he found that the aisle was blocked just beyond the movie screen that is located at row 45, by a short, heavyset woman wearing high heels who was struggling to "push" her luggage into the overhead bin. Dr. Kwon was standing close to this passenger as she made at least five attempts to stow her luggage. There were many passengers lined up behind Dr. Kwon in the aisle, but there were no passengers between the struggling passenger and the back of the plane. After the passenger successfully pushed her luggage into the overhead bin, she lost her balance, stepped back and the heel of her shoe landed on Dr. Kwon's left foot, injuring one of his toes. Dr. Kwon then fell to the right and injured his thumb. The chief steward and a flight attendant who spoke to Dr. Kwon during the flight did not witness the incident.

Article 17 of the Warsaw Convention sets forth the conditions of liability for personal injury to passengers:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the **accident** which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking. (emphasis added)

*see also Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 535–36, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Originally, the Warsaw Convention capped liability at approximately $8,300 per passenger. Warsaw Convention Art. 22; *Wallace v. Korean Air,* 214 F.3d 293, 296 (2nd Cir.2000). In response to the United States' threat to withdraw from the Convention if the limits on liability were not increased, air carriers reached the Montreal Agreement of 1966, which raised the liability limitation to $75,000 for flights originating, terminating or having a stopping point in the United States. *See* 31 Fed.Reg. 7302 (1966); *Wallace,* 214 F.3d at 297; *Floyd,* 872 F.2d at 1468. This resulted in "virtual strict liability" for air carriers. *See Wallace,* 214

F.3d at 297 (citing *In re Korean Air Lines Disaster of Sept. 1.1983,* 932 F.2d 1475, 1485 (D.C.Cir.1991)). Subsequently, air carriers entered into the International Air Transport Association (IATA) Intercarrier Agreement, which is comprised of three related but separate agreements. *See* Tony A. Weigand, *The Modernization of the Warsaw Convention and the New Liability Scheme for Claims Arising out of International Flight,* 84 Mass. L.Rev. 175, 183–84 (2000). Under the IATA agreement, which defendant has incorporated in its tariff, "[a] passenger claimant is entitled to provable damages up to 100,000 SDRs on the basis of strict liability. The claimant can recover provable damages in excess of 100,000 SDRs if the carrier fails to establish that it took 'all reasonable measures' to avoid the damage, or that it was impossible to take such measures." [3] *Id.* at 184; *see also Price v. KLM–Royal Dutch Airlines,* 107 F. Supp.2d 1365, 1370 (N.D.Ga.2000).

What constitutes an accident within the meaning of Article 17 has been the subject of much litigation.[4] In *Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the Supreme Court denied recovery to a passenger who had been injured by a routine change in cabin pressure experienced during an aircraft's landing, holding that when a passenger's "injury indisputably results from the passenger's own internal reaction to the usual, normal and expected operation of the aircraft, it has not been caused by an accident." *Saks,* 470 U.S. at 406, 105 S.Ct. 1338. In reaching its decision, the Supreme Court defined an accident within the meaning of Article 17 as "an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405, 105

S.Ct. 1338. The Court admonished that this "definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injury." *Id.; see also El Al Israel Airlines Ltd. v. Tseng,* 525 U.S. 155, 165, n. 9, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). As examples of accidents, the Court cited torts committed by terrorists and by fellow passengers. In support of the latter, the Supreme Court cited *Oliver v. Scandinavian Airlines Systems,* 17 Av.Cases (CCH) 18,283 (D.Md.1983).

In *Oliver,* the court denied the airline's motion to dismiss the complaint, which alleged that plaintiff was injured when an intoxicated fellow passenger fell on her. In finding that the complaint alleged an accident, the court ruled as follows:

> Although the alleged cause of the accident, the continued availability of alcohol on the plane, may not have been accidental, the proper focus is on what happened to the passenger. Consequently, this court concludes that an accident occurred when the fellow passenger fell unexpectedly upon the plaintiff.

*Id.* at 18,284. Since it cited *Oliver* as an example of an accident committed by a fellow passenger, it follows that the Supreme Court considered the passenger falling, not "the continued availability of alcohol on the plane," to be the accident.

As in *Oliver,* Dr. Kwon was injured when a fellow passenger unexpectedly stepped on his foot. Adhering to *Saks* and *Oliver,* I find that this constitutes an Article 17 accident because Dr. Kwon's injury was caused by an unexpected or unusual event (Dr. Kwon did not expect when he boarded the aircraft that a passenger wearing high heeled shoes would step on

---

**3.** A Special Drawing Right, or SDR, is an accounting unit developed by the International Monetary Fund. One hundred thousand SDRs equals approximately $130,000.

**4.** *See* Kurtis A. Kemper, *What Constitutes Accident under Warsaw Convention (49 U.S.C.A. § 40105),* 1998 WL 459350, 147 A.L.R. Fed. 535 (1998).

his foot while trying to stow her luggage in the overhead compartment) and the conduct of the fellow passenger was external to Dr. Kwon.

■ Defendant, however, relies on several lower court cases that have put glosses on the definition of accident that are not contained in Article 17 or in *Saks*. Some courts have required that the accident must be caused by a risk characteristic of air travel, or must bear some relation to the operation of an aircraft, (*see, e.g.,* Max-well v. Aer Lingus Ltd., 122 F.Supp.2d 210, 213 (D.Mass.2000); *see also Wallace*, 214 F.3d at 299; *Gotz v. Delta Airlines, Inc.*, 12 F.Supp.2d 199, 203 (D.Mass.1998)), though the Ninth Circuit has declined to recognize this gloss. *See Gezzi v. British Airways PLC*, 991 F.2d 603, 605, n. 4 (9th Cir.1993). To the extent that a finding of an "accident" under the Warsaw Convention requires a risk characteristic of air travel or a connection to the aircraft, both are present here. The stowing of luggage by people who are too short to comfortably reach the overhead compartment, which is provided by the airline as an amenity for passengers, and the inability of passengers to move during boarding when the aisle is being blocked in front by a passenger stowing luggage and in back by other passengers trying to get to their seats are hallmarks of air travel. In the words of

the Second Circuit, "the characteristics of air travel increased [Dr. Kwon's] vulnerability to [the passenger's misstep]." *Wallace*, 214 F.3d at 299.[5]

Other cases have found no accident where the cause was seen as common or not unusual. *See, e.g., Brandt v. American Airlines*, 2000 WL 288393, *7–8 (N.D.Cal.); *Sethy v. Malev–Hungarian Airlines, Inc.*, 2000 WL 1234660 (S.D.N.Y. 2000). Defendant strongly urges that approach in this case, relying on evidence from its staff that passengers routinely step on other passenger's toes in the narrow confines of an aircraft.

This contention has a number of flaws. First, it is suggested neither by the language of the Warsaw Convention nor by the holding in *Saks* that an injury caused by the normal operation of an aircraft is not an accident. It is also contrary to the Supreme Court's admonition to flexibly apply the standard. It would mean, for example, that a passenger who slipped on a wet spot in the aisle could not recover since it is a common experience that liquids and ice are frequently spilled by passengers and flight attendants as drinks are served and consumed.[6] It is also hard to see what policy is advanced by absolving an airline of responsibility for such "garden variety" torts which occur on airplanes. It neither compensates the in-

---

5. *Gotz v. Delta Airlines, Inc.*, 12 F.Supp.2d 199 (D.Mass.1998) does not mandate a different result. In that case, Mr. Gotz was in the process of stowing his luggage in the overhead bin when a passenger seated beneath him stood up and extended his arm upwards, causing Mr. Gotz to hyperextend his arms thereby tearing the rotator cuffs in both shoulders. Mr. Gotz conceded that the injuries stemmed from his own reaction to the passenger's movements, and the court found that Mr. Gotz failed to show that the passenger's rise was unexpected or unusual, or that the seated passenger's movements were related to the operation of the aircraft. The court concluded that the event was not an accident

under Article 17, and described Mr. Gotz as, in essence, the "defective link" in the causal chain. *Gotz*, 12 F.Supp.2d at 205.

6. If the airline is not at fault, it can limit its liability to 100,000 SDRs under the Convention and subsequent Agreements. It can also file a third-party complaint against a passenger more easily than can the injured passenger since the airline is more likely to know the identity of the passenger at fault. In pretrial, Dr. Kwon claimed that one of the reasons he did not sue the passenger, was defendant's reluctance to cooperate in identifying the passenger, invoking her right to privacy.

jured passenger nor provides any incentive for the airline to attempt to avoid "common" accidents.[7]

Dr. Kwon incorrectly argues that defendant's failure to assist the passenger stowing her baggage and defendant's failure to prevent the passenger from bringing an oversized bag are Article 17 "accidents." The first claimed "accident" turns on Dr. Kwon's testimony that he saw a stewardess in the back of the plane near row 60 and that she saw the struggling passenger, but failed to assist her. Dr. Kwon's testimony was contradicted by the testimony of the Chief Steward, Mr. Kam. Mr. Kam testified regarding the positions of the six flight attendants who were stationed in economy class. He testified that as Chief Steward, he was stationed in the area where the accident occurred and did not see the incident. He located all of the female flight attendants and testified that none were stationed near the incident. After assessing the credibility of the witnesses, I conclude that Dr. Kwon has failed to persuade me that a stewardess saw and ignored the incident. I was impressed by Mr. Kam's testimony about the training crew members receive to assist passengers with their luggage and his testimony that crew members who do not carry out their duties are subject to discipline. Indeed, he disciplined one of the flight attendants on this flight for completely unrelated reasons. Under these circumstances, it seems unlikely that a flight attendant with a clear view of a struggling passenger and with no other passengers requiring assistance, given Dr. Kwon's testimony that there were no passengers in the aisle between the passenger with the suitcase and the back of the plane, would stand idly by and ignore the passenger.

The second claimed "accident" turns on whether the female passenger's bag exceeded defendant's limitations on baggage size and should not have been permitted on the plane or in the overhead bin. On the day of trial, Dr. Kwon's counsel produced a suitcase belonging to Dr. Kwon, that on other occasions by unidentified airlines, was "sometimes" rejected as a carry-on bag. Dr. Kwon testified that the struggling passenger's bag was larger than this bag. I attach little weight to this testimony because of its speculative nature and because the testimony was not that the passenger was having trouble lifting the bag because of its weight or size but rather that she was having trouble "pushing" it into the overhead compartment because she was too short. For these reasons, I conclude that Dr. Kwon has not carried his burden of establishing that defendant caused an accident by permitting the passenger to board with a prohibited bag.

■ Whether this is a compensable accident is another question. Defendant has advanced two defenses under the Warsaw Convention: Article 20(1) and Article 21. Article 20(1) states:

The carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.

---

7. As the second circuit noted in *Magan v. Lufthansa German Airlines*, 339 F.3d 158 (2d Cir.2003), the airline is in a better position to spread the cost of the accident. *Magan*, at 162 n. 3 ("Courts have theorized that one of the guiding principles that pervades, and arguably explains, the original Convention, the subsequent modifications, and even the Court's decision in *Saks*, is an apportionment of risk to the party best able to control it, which provides some degree of certainty and predictability to passengers and air carriers, and which encourages them to take steps to minimize that risk to the degree that it is within their control.").

Carriers need not take all possible measures, just " 'all precautions that in sum are appropriate to the risk, i.e., measures reasonably available to the defendant and reasonably calculated, in culmination, to prevent the subject loss.' " *Verdesca v. American Airlines, Inc.,* 27 Av.Cases (CCH) 18,160, 18,163 (N.D.Tex.2000) (quoting *Manufacturers Hanover Trust Co. v. Alitalia Airlines,* 429 F.Supp. 964, 967 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1292 (2nd Cir.1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1612, 56 L.Ed.2d 63 (1978)).

Here, defendant took all necessary measures to prevent injuries such as that suffered by Dr. Kwon. Defendant has regulations and procedures regarding the order in which passengers are boarded, the positioning of flight attendants during boarding and the requirement that flight attendants assist passengers in stowing their luggage. Defendant also has a training program that features, among other things, instruction in boarding positions, preflight duties, in-flight service duties and decorum. In addition, defendant has regulations regarding size and weight of carry-on baggage. Dr. Kwon presented no persuasive evidence that defendant failed to adhere to its procedures and regulations during this flight or at any other time. Nor did Dr. Kwon submit any evidence of other reasonable measures that could have been taken but were not. Accordingly, defendant is entitled to assert the Article 20(1) defense, which, in accordance with the IATA Agreement, limits Dr. Kwon's recovery to provable damages up to 100,000 SDRs.

█ Article 21 limits liability for an "accident" based on Dr. Kwon's contributory negligence. Article 21 states:

If the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability.

Negligence under Article 21 is in the nature of comparative negligence, rather than a traditional contributory negligence standard. *See Husain v. Olympic Airways,* 116 F.Supp.2d 1121, 1141 (N.D.Cal. 2000), *aff'd,* 316 F.3d 829 (9th Cir.2002); *see also Eichler v. Lufthansa German Airlines,* 794 F.Supp. 127, 130 (S.D.N.Y.1992).

█ Defendant suggests that Dr. Kwon was negligent in not moving out of the way of the struggling passenger and in not assisting her with her baggage. Dr. Kwon testified that he was no more than a forearm's distance away from the struggling passenger and that there were many passengers behind him, waiting for the aisle to clear. I cannot fault Dr. Kwon's failure to move away from the female passenger. Similarly, although assisting the struggling passenger might have been chivalrous, I cannot fault Dr. Kwon's failure to do so because he did not have a duty to help.[8]

For these reasons, it is **HEREBY OR-DERED** that judgment on the issue of liability is entered in favor of Dr. Kwon. It is **FURTHER ORDERED** that defendant's liability is limited by Article 20(1). It is **FURTHER ORDERED** that a status conference is scheduled for **September 22, 2003 at 4:00 p.m.** in Courtroom G, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA, to discuss the second phase of the trial on damages.

---

8. Responsibility for proper stowing of items in the overhead compartment should not be shifted to passengers, who are "neither suited nor inclined to the task." *Maxwell v. Aer Lingus Ltd.,* 122 F.Supp.2d 210, 213 (D.Mass. 2000).